THE HOPE MINING Co., appellant, v. KENNON, TREAS., respondent.

CONSTRUCTION OF STATUTE — *Revenue Act* — *silver bullion.*  In construing the several sections of the Revenue Act (Codified Statutes, 1872), the aim must be to ascertain the intention of the legislature as far as possible by the act itself, as a whole, and with all its parts. Sedgwick on Stat. and Const. Law, 379. Section 4 of this act cannot be construed alone to the disregard of other sections containing general provisions equally explicit.  Nor can the enumeration therein of certain kinds of property liable to taxation be properly construed as exempting other species of property not enumerated. Taxation is the rule, and exemption the exception.

The exemption of unpatented mines does not extend to the product of such mines, nor is it liable to the charge of double taxation, because the stock of an incorporated company is taxable, and also the products of a mine worked by such company.

Silver bullion is property within the meaning of the law, and not being contained within any express exemption, must be regarded as taxable under the law.

### *Appeal from Second District, Deer Lodge County.*

THIS cause was tried in both courts upon an agreed statement of facts, involving only a construction of the statute.

SHARP & NAPTON, for appellant.

The exemption of the mine exempts the product of the same. Courts should acquiesce in the construction that heretofore has uniformly been given this act.  See Sedgwick on Stat. and Const. Law, 379 ; *Pennington* v. *Coxe*, 2 Cranch, 33 ; *United States* v. *Fisher*, id. 358 ; *Preston* v. *Browder*, 1 Wheat. 115.

A thing must be within the intent as well as letter of the law. Cooley on Tax. 202.

The statute will not be construed to create excessive taxation. Cooley on Const. Lim. (3d ed.) 519–20, and cases cited.

Taxation of the stock of an incorporated company by implication exempts its property, else results double taxation.  Angell & Ames on Corp. 373 ; 10 Mass. 514.; 17 id. 53, 461 ; *State* v. *Brown*, 23 N. J. 484; *State* v. *Bentley*, id. 532; *Baltimore* v. *B. & O. R. R. Co.*, 6 Gill, 288 ; 13 Wall. 264 ; Cooley on Taxation, 160–166.

Double taxation is void regardless of constitutional limitations. Cooley on Const. Law, title Taxation.

By the enumeration of certain kinds of property in section 4 of the Revenue Act, all other property not designated is exempt from taxation.

When general words follow particular ones the former are to be construed as applicable to the persons or things particularly mentioned. *City of St. Louis* v. *Loughlin,* 49 Mo. 563; Sedgwick on Stat. and Const. Law, 423.

If bullion had been intended to be made subject to taxation it would have been specified along with gold dust and money in coin.

A. E. Mayhew and W. W. Dixon, for respondent.

As to the power to tax the product of unpatented mines the title of which is in the United States, see *State* v. *Moore,* 12 Cal. 56; *People* v. *Shearer,* 30 id. 645; *People* v. *Cohen,* 31 id. 210; 37 id. 54.

There are but two restrictions in the Organic Act on the power of the legislature of the Territory to impose taxation, neither of which affect the subject-matter in controversy.

Courts are to confine themselves to the constitutionality and meaning of law and not to regard its policy, morality or hardship. Sedgwick on Stat. and Const. Law, 180, 185, 229, 231; *S. & V. R. R. Co.* v. *Stockton,* 41 Cal. 147; *Sands* v. *Maclay,* 2 Mont. 35.

Bullion is property and is nowhere exempted from taxation. See §§ 3 and 4, Codified Statutes, 1872.

General words in a statute must receive a general construction unless some ground can be found in the statute restricting or enlarging the meaning of the general words. *Tynan* v. *Walker,* 35 Cal. 634.

Section 6 shows that the law contemplated the taxation of other property not mentioned in section 4.

Exemptions from taxation are to be strictly construed. See Cooley on Tax. 130, 146, 153, 154, and note 2; Sedgwick on Stat. and Const. Law, 344.

Even unjust and duplicate taxation is not invalid. Cooley, 160–3.

WADE, C. J.  The question involved in this appeal is whether or not, under the laws of this Territory, that particular property known as base or crude silver bullion is subject to taxation. Bullion is defined to be uncoined gold or silver in mass.  Properly, the precious metals are called bullion when smelted and not perfectly refined, or when refined, but in bars or ingots, or in any form uncoined, as in plate.  Crude or base silver bullion, as familiarly known in this Territory, and which is mentioned in the agreed statement of facts herein, is silver in bars, mixed to a greater or less extent with base metals.  Silver bullion as thus described and known here is property.  The agreed statement shows that the appellants are in possession of, and own property of this kind, of the value of $88,112.  In this Territory bullion is an article of commerce, and its production is one of the leading branches of industry here.

Is this kind of property subject to or exempt from taxation?

Every form of government necessarily provides some system of taxation.  This results from the objects and purposes for which governments are instituted and organized, viz.: the guarantee and protection of individual rights, and the security and enjoyment of private property.  And as all property is alike protected, it follows that the burden imposed as the price of this security should be equally and evenly distributed.  Hence results the proposition, that taxation is the rule, and exemption from taxation, the exception.  Taxation, however, is controlled by legislative enactments, and its scope and extent is as limited by law. Our legislature has devised a system of revenue laws, and taxation being entirely a creature of statute, to these laws we must look to determine the question involved herein.

Section 3 of our act for the collection of revenue provides (Codified Statutes, 1872, 601):  "All property of every kind and nature in this Territory, on the first day of January of each year, or which shall arrive or be found in this Territory before the last day of December, ensuing, shall be subject to taxation except,"

etc. * * * Then follow nine certain specific exceptions, such as court-houses, jails, school-houses, public asylums, churches, other charitable institutions and the like, which are designed to exempt certain property from taxation. This section is explicit and certain. It requires no interpretation; its language is unambiguous and positive, and embraces property of every kind and character not therein specially excepted.

Section 4 provides: "All other property, real or personal, within this Territory is subject to taxation in the manner herein directed, and this is intended to embrace improvements on land," etc., naming several other kinds of property.

Section 15 provides that the tax list shall contain his, her, or their lands, personal property employed in merchandise, etc., and the amount of all other taxable property not enumerated.

Section 16 defines specifically what the tax list shall contain, and requires the person who is being assessed for taxation to answer under oath at the conclusion of the list, the following questions: "Have you any other property than that above mentioned?" "If so, enumerate it."

In construing these sections and others of the Revenue Act, our purpose must be to ascertain the intention of the legislature. The means of ascertaining this intention are to be found in the statute itself, taken as a whole, with all its parts. Sedgwick on Stat. and Const. Law, 379.

It is a universal principle of construction that courts must find the intent of the legislature in the statute itself. Unless some ground can be found in the statute restraining or enlarging the meaning of its general words, they must receive a general construction, and the courts cannot arbitrarily subtract from or add thereto. *Tynan* v. *Walker*, 35 Cal. 642.

It is assumed by the appellant in the argument that section 3 of the act expresses the general intention of the legislature, and that section 4 limits and controls such intention by specifying particulars. In other words, that section 4, in the specific items of property therein named and described, contains all the kinds of property that under any circumstances are subject to taxation. This assumption is not warranted by the rules of stat-

utory construction. We must gather the general intention of the legislature from an inspection of the whole enactment and every part of it. We cannot look exclusively at section 4, and shut our eyes to the other sections. Each section, if possible, should be made to harmonize with every other section, and only when the words are ambiguous and uncertain can resort be had to any thing outside the statute itself. If the language is unambiguous it is its own interpreter.

It is further assumed that section 4, when it declares that " All other property, real and personal, within the Territory is subject to taxation in the manner herein directed, and that this is intended to embrace improvements on land," etc., naming several different kinds of property, thereby defines in the enumeration of particular property just what is meant by the general words, " all other property, real and personal," — that is to say, that section 4 names certain property as subject to taxation, defining what is embraced in the words, " all other property, real and personal," and that all property within the Territory not so named is exempt from taxation.

There might be some force in this assumption, if section 4 contained the whole enactments. But this section must be construed with reference to each and every other section of the act, and effect must, if possible, be given to each section. The evident intention of the legislature in making an enumeration in section 4 was to subject to taxation certain property, that otherwise might have escaped the burden, such as annuities, franchises, ditches, flumes, money, gold dust, etc.

If section 4 in its enumeration of property embraces all property upon which a tax can be levied, then we are forced to the conclusion that the legislature, in the passage of section 4, thereby intended to make void sections 3, 15 and 16, for these sections imperatively require that all property of every name and nature shall be listed and valued for taxation whether such property is enumerated in the statute or not.

Now an examination of the whole act and its several sections at once produces the conviction that the legislature intended that all property of every kind in the Territory should be subject to

taxation, saving only such property as is therein specially exempted. Section 3 demands this by declaring that all property of every kind and nature shall be subject to taxation. Section 15, by requiring a list of all property whether enumerated or not; and section 16, by requiring the person to answer not only as to the property named, but as to all other property he may have. The bare fact that certain property is, by the language of the act, exempted from taxation raises a strong presumption that all other property is subjected to taxation, and when that natural presumption is made absolute by the words of the statute, there is left no room to doubt what the legislature intended.

Sections 3, 15 and 16 are in perfect harmony. Section 3 provides that all property of every kind shall be subject to taxation; section 15 requires the assessor to list all property for taxation whether enumerated or not; and section 16 requires the person who is being assessed to answer, under oath, not only as to the property mentioned in the statute, but as to any and every other kind or species of property he may own. Section 4 is not in conflict with either of these sections. While there are mentioned in section 4 several kinds of property, about which there could be no doubt as to its being subject to taxation, the evident object and purpose of the enumeration contained in this section was to cover property, which but for such enumeration might have escaped taxation, as for instance, improvements on land made under a mere possessory right, while yet the title remained in the United States, or gold coin, gold dust, bank bills, annuities, etc. But whether the property is enumerated or not; whether it is or is not named in section 4, the absolute requirement of sections 3, 15 and 16 is that it shall be named and valued in the list for taxation. The language of these three sections is much broader and at the same time more particular and specific than is the language of section 4, and with better propriety might it be said that these sections make void section 4, than to say with the appellants that section 4 virtually makes them void. The requirement that certain property shall be taxed is not at all in conflict with the requirement that all other property shall be taxed. The enumeration in section 4 does not in the least

conflict with the requirements of sections 15 and 16, that the tax list shall contain, not only the property enumerated, but any and all other property.

A bare inspection of section 4 will refute the proposition contended for by the appellants, that taxation is wholly confined to the very limited and restricted kinds of property therein enumerated. Our Revenue Act is a general one evidently designed to subject the property of the Territory generally to taxation. We cannot hold, unless compelled to do so by the rules of interpretation, that the legislature intended to particularize and name only the different kinds of property that should be taxed. The nature, form and shape of property is constantly changing; new industries are constantly producing new kinds of property; every year by importation, by ingenuity, industry and enterprise, something new, something unknown to the particular nomenclature of the statute is added to the property of the Territory, and the language of the statute in its broad and general terms, as well as common sense, forbids an interpretation that limits and restricts taxation to the very few articles originally designated in the act.

The interpretation contended for exempts all merchandise in the Territory from taxation. The property known as merchandise is unknown to section 4; section 6 provides how merchandise *in the possession of merchants* shall be listed and valued, but for the requirement that it shall be taxed, when thus listed and valued, we must look to the general words of sections 3, 15 and 16. Section 4 is silent on the subject, but the law-makers having provided for the listing and valuation of merchandise for taxation, we must conclude that they supposed they had provided for such taxation in the sections named. The valuation of merchandise is an idle thing unless it can be taxed, and the provision for its valuation is entirely harmless for all there is in section 4.

Owning property for the purposes of taxation, and the authorizing of a levy thereon, are entirely different things, and by adopting the interpretation asked for, we have a statute providing for the mode and manner of listing and valuing of merchandise for taxation, but no authority to levy a tax thereon. And

even this listing and valuing is only required when the merchandise is in the possession of merchants. Now, 'suppose this kind of property is in the possession of persons other than merchants. According to the argument, such property so owned and possessed is absolutely exempt from taxation. It is not even to be listed or valued. If section 4 controls, then this and a vast amount of other property in the Territory escapes taxation.

Take the article of wool, property largely produced in the Territory. It is not named in section 4, and it is not merchandise. It is produced by the stock-men and farmers and used or sold where best they can find a market. It is nowhere named in the statute, and therefore according to the notion of appellants is exempt from taxation. And so, beef in the barrel, hams, bacon and mutton, representing a large industry here, and with which our meat markets are filled, are not named in the statute and therefore are exempt. The article of wood, the production of which engages the attention of a large class of people here, is not mentioned in the statute. And so with lumber, the production of which builds up fortunes; and so with flour, wheat, pork, oats, barley, hay, malt, potatoes, all farm products after being severed from the land; manufactured sash, doors, blinds, steam-engines, boilers and castings. All of these things are produced here and represent a large amount of property, but not being named in section 4 are exempt from taxation according to the theory of appellants. Take the property known as hides and furs, both being produced here in large quantities, representing the wealth and labor of numerous individuals, and yet not being named in section 4, are to escape all taxation. And so with property in copper, lead and coal, each the product of the Territory and representing property here. And so we might continue to an almost unlimited extent, to name property in the Territory that is unknown to section 4, and which therefore, according to the proposition of appellants, should escape taxation.

In the light of these facts can we suppose that the legislature, after having declared that all property in the Territory should be subject to taxation, intended, by the enactment of section 4, to make taxation the exception, and exemption the rule? The theory

of the appellants would compel the adoption of this rule, for it is safe to say that more property in the Territory can be named outside of section 4 than is mentioned in that section.

But it is argued that had it been the intention of the legislature to subject bullion to taxation, it would not have been left out of the enumeration of property in section 4, subject to taxation, when money in coin and gold dust are spoken of and embraced in the enumeration. We have already indicated the reason why gold dust and coin were mentioned in the enumeration. But suppose this gold dust is melted and run into bars, as it generally is, as soon as taken from the ground, whereby it becomes bullion, then, according to the position of the appellants, it is to escape taxation ; and so, if coin is converted into bullion, it cannot be taxed, because bullion is not named in section 4. And so, if A. is the owner of a valuable herd of cattle and sells them and converts their value into bullion, wool, wood, lumber or merchandise, he thereby places his property beyond the reach of assessment for taxation. In like manner if any of the property mentioned in section 4 is but converted into property not therein named, and especially into bullion, it becomes at once exempt from taxes. Even if the change of form increases the value of the property, but changes its name, then it is to escape.

These illustrations, it seems to me, demonstrate the fallacy of the appellants' position. The truth is that when our Revenue Act became a law, the country had not produced property known as silver bullion to any extent. Gold, from placers and leads, was then our chief production in the precious metals, which the legislature was careful to subject to taxation. Since that day an extensive industry has sprung up here in the production of silver bullion, copper and lead, and care seems to have been taken in the enactment of our Revenue Laws, to make them broad enough to cover every kind and description of property that might be brought into, or produced within, the Territory.

It is claimed that one of the exemptions in section 3 forbids the taxation of bullion. The exemption is as follows:

" Ninth — mines and mining claims, except those held under patent from the United States."

A mining claim is a certain defined piece or parcel of ground, and the meaning of this exemption is that while the claimant has merely a possessory title, and before acquiring title from the United States this ground shall not be subject to taxation. That is to say, the mere possessory right of the claimant in the ground itself shall not be taxed. But this exemption does not cover the product of the mine any more than the exemption of growing crops exempts the money for which they are sold.

The legislature could not have intended to subject to taxation the products of patented mines, while those of unpatented mines were exempt, where every thing necessary to procure the issuance of a patent had been performed by the claimant.

Suppose a homestead of 160 acres was exempt from taxation, would it necessarily follow that its products, its horses, cows, sheep, wool, grain and hay were also exempt?

The plaintiff is a corporation whose stock is divided into shares and owned by individuals, and the appellant contends that because these shares of stock are subject to taxation, therefore the products of the property are exempt. Suppose this corporation owned a farm and was engaged in the business of raising sheep for the production of wool and mutton, instead of owning a mine and engaged in the business of producing bullion. In the former case the shares of stock would represent the value of the farm as a farm, while in the latter they would represent the value of the mine as a mine, independent of what labor and skill might make it produce. Even if the taxation of the products of the mine and the shares of stock works a hardship or results in duplicate taxation, the same is not invalid. The law must be enforced until it is repealed.

For these reasons the judgment is affirmed, with costs.

*Judgment affirmed.*