Wilkes-Barre Deposit & Savings Bank, Appellant, v. City of Wilkes-Barre.

148    601
29 SC ²154
148    601
f222    296

*Taxation—Municipal bonds—Act of June 1, 1889.*

It is the duty of the city treasurer to retain, out of the interest on city bonds, the tax imposed by the act of June 1, 1889, § 1.

*Bonds held by savings bank—Effect of payment of six mill tax under § 25 of the act of June 1, 1889.*

Notwithstanding the payment by a savings bank of a tax of six mills on the dollar upon the par value of all the shares of its stock, under § 25 of the act of June 1, 1889, city bonds, held by it and constituting part of its capital and profits, are taxable under § 1 of said act.

Argued April 12, 1892. Appeal, No. 393, Jan. T., 1892, by plaintiff, from judgment of C. P. Luzerne Co., Jan. T., 1892, No. 13, on case stated. Before PAXSON, C. J., STERRETT, GREEN, MCCOLLUM and MITCHELL, JJ.

Case stated to determine liability of plaintiff for tax on city bonds.

The case stated was as follows:

"Now, December 7, 1891, the following facts are agreed upon as a case stated for the opinion and judgment of the court, either party reserving the right to an appeal or writ of error.

"1. On the 13th February, 1891, the plaintiff, (which now is and for many years past has been a savings banking institution, duly incorporated under the laws of Pennsylvania and carrying on business in the city of Wilkes-Barre, under its corporate name of 'The Wilkes-Barre Deposit and Savings Bank,') pursuant to the Act of June 1, 1889, Pamphlet Laws of 1889, page 420, and to its previous election so to do under the 25th section of said act, paid into the state treasury of the commonwealth the sum of $900, in full of its taxes under said act for the year 1891, at six mills on the dollar upon the par value of all its shares that had been subscribed for or issued, and on the same day its account with the commonwealth in that behalf was receipted and balanced.

"2. The said plaintiff, on October 29, 1891, purchased coupon bonds of the par value of $13,000, which had previously been duly and legally issued by the defendant, the City of Wilkes-Barre, and which now constitute a part of the capital and profits

of the plaintiff bank. Said bonds bear interest at the rate of five per cent per annum, payable semi-annually on the first days of May and November, as evidenced by the coupons attached thereto, and payable by and at the office of F. V. Rockafellow, Esq., the treasurer of the said defendant.

" 3. On December 1, 1891, the plaintiff presented to the said treasurer the coupons on said bonds payable November 1, 1891, for six months' interest due on the latter date, amounting to $325, and demanded payment thereof, whereupon said treasurer offered to pay the amount last aforesaid but only after first deducting the sum of $39.00, to wit, an amount equal to three mills on the dollar of the said $13,000 principal of said bonds, which said $39.00 the said treasurer assumed to retain from the plaintiff as state tax required by law to be withheld by the treasurer for the use of the commonwealth.

" If, under the foregoing facts, the said city treasurer was authorized by law to retain said sum of $39.00 from the plaintiff, as state tax due from the latter by virtue of its ownership of said bonds, then judgment to be entered for the plaintiff for $286 ; but if said treasurer was not thus authorized, then judgment to be entered for the plaintiff for the sum of $325, with interest from December 1, 1891. In either event costs to follow judgment."

The opinion of the court below by RICE, P. J., was as follows :

" This case raises three questions which we shall state and consider in their order:

" 1. Has a city treasurer authority to retain out of the interest on city bonds the state tax imposed by § 1 of the act of June 1, 1889, P. L. 420 ? The 2d proviso of § 2 of the act directs the holders of obligations of public or private corporations not to include them in their returns to the assessors, ' it being the true intent and meaning of this act that the provisions of the law in force at the time of the passage of this act, relating to the collection of the tax upon such obligations, shall remain unaffected by the present act.' The provisions of the law here referred to are those beginning with the act of 1844, whereby treasurers of public and private corporations are required to assess the state tax upon the obligations of the corporation, and to retain the same out of the interest due the holders, and pay it over to the state treasurer. These provisions of earlier en-

actments are still in force and are valid: Com. v. Martin, 107 Pa. 185; Com. v. Chester, 123 Pa. 626; Com. v. Del. Div. Canal Co., 123 Pa. 594. We therefore answer the first question in the affirmative.

" 2. Is money at interest secured by city bonds, held by savings banks, taxable under § 1 of the act of 1889? It was held that such obligations held by corporations were not taxable under § 1 of the act of 1885, because the 'phrase, any person or persons whatsoever,' was construed to mean, in this connection, natural persons only: Fox's Ap., 112 Pa. 337. But in the act of 1889, banks and corporations are expressly included in the enumeration of taxable owners, and no room is left for construction. The subjects of taxation are, inter alia, 'all mortgages, all money owing by solvent debtors, whether by promissory note, or penal or single bill, bond or judgment,' and 'all public loans whatsoever, except those issued by this commonwealth or the United States.' The exceptions are 'bank notes or notes discounted or negotiated by any banking institution, savings institution or trust company.' If the case rested here the rule that the expression of one thing is the exclusion of others, would apply, and no room would be left for inferring that other exceptions were intended: Brocket v. Pa. R. R. Co., 14 Pa. 241; Miller v. Kirkpatrick, 29 Pa. 226; Olive Cemetery Co. v. Phila., 93 Pa. 129. Interest-bearing bonds of a city, held by a savings bank, are clearly within the purview of the section, and, just as clearly, are not within any of the exceptions. Notwithstanding the shareholders are taxable on their stock, the bank is also taxable on the obligations in question, unless they are exempted therefrom by some subsequent section, or unless it appears from a fair view of the act as a whole that the former method of taxation was intended to be exclusive. This brings us to the third question.

" 3. Are loans, secured and held as aforesaid, and constituting part of the capital and profits of a savings bank, exempt from such taxation when the bank has elected to pay into the state treasury, on or before the first day of March, a tax of six mills on the dollar upon the par value of all the shares of stock of said bank that have been subscribed for or issued?

" Section 25 of the act provides that, when any bank or savings institution makes the election referred to, 'the shares, and

so much of the capital and profits of such bank as shall not be invested in real estate, shall be exempt from local taxation, under the laws of this commonwealth.' If the bank does not make the election, a method is prescribed, whereby the auditor-general settles an account against the individual shareholders for the three mills state tax on shares, and he is directed to proceed to collect the same according to law, and to transmit the list and assessments made by him to the commissioners, or board of revision, of the proper city or county, to be used by them in assessing taxes against shareholders. All this seems to be very plain, and to give no occasion for construction. The premium for paying the six mills tax on the par value of the shares is exemption from local taxation. There may be some compensation also, where the market value of the shares is greater than the par value. But, be that as it may, exemption of shares, and capital and profits not invested in real estate, from local taxation, cannot be construed to exempt money at interest, although constituting a part of the capital and profits of the bank, from state taxation, unless we assume that the legislature used the phrase, local taxation, in the sense of taxes levied under state, as distinguished from federal, laws. In that sense a state tax would be a local tax, but in no other, and, of course, the phrase was not used in that sense. The act of 1889 is a supplement to, and an amendment of the act of 1885, in which the language was, 'shall be exempt from all other taxation under the laws of this commonwealth.' The substitution, in the act of 1889, of the phrase ' local taxation under the laws of this commonwealth,' shows an unmistakable intention to confine the exemption to taxation for local purposes, or by local authorities.

" But, it is argued, if a savings bank is subject to the three mills tax on that portion of its capital and profits invested in interest-bearing obligations, and the individual shareholders are subject to a like tax for the same purpose, on the value of their shares, there will be double taxation. But double taxation is not prohibited, and is sometimes unavoidable. It is unnecessary to cite the numerous cases sustaining it. In Fox's Ap., 112 Pa. 337–354, the power of the legislature to tax the capital stock of corporations, and also mortgages and other interest-bearing obligations of the corporation, was not doubted. The

present chief justice said : ' Were the tax of 1885 on mortgages extended to corporations, the result would be double taxation, which, while not beyond the powers of the legislature, is not to be presumed in the absence of a clear intent to impose it.' The omission of corporations from the enumeration of taxable owners of interest-bearing obligations, in the act of 1885, was one of the reasons, if not the principal reason, for the passage of the act of 1889. In view of this fact, and of the plain language of the act, would it be safe to presume an intent to exempt all corporations from such taxation, merely because the individual shareholders are also taxable on the value of their shares ? We think not. In the first case the tax is on a part of the property of the corporation; in the other case the tax is on the property of the shareholders. Capital stock of a corporation is a different thing from shares of stock : Lycoming Co. v. Gamble, 47 Pa. 110. The capital stock represents the property and assets of the company, which may consist in whole, or in part, of real estate. The certificates, or shares of stock, are the evidence of an interest which the holder has in the corporation, and it is well settled that this interest is personal property (Bouv. L. Dict., Personal Property), and, as such, follows the person of the owner: McKeen v. Northampton, 49 Pa. 519 ; Com. v. Standard Oil Co., 101 Pa. 119–148. If there is this distinction between capital stock and shares, there is an equally plain distinction between part of the capital invested in interest-bearing securities and shares. Under the decisions both may be taxed for state purposes if the legislature so wills, and, in the case of banks and savings institutions, we think the intent of the legislature is free from all doubt. This is not necessarily double taxation, although we concede there are cases where it would amount to that, at least as against resident shareholders.

" The decision in Fidelity Co. v. Loughlin, 139 Pa. 612, is not applicable, except to show the care taken by the legislature in distinguishing between corporations liable to a capital stock tax eo nomine, under § 21, and banks and savings institutions which are not liable to such tax. In the former case the proviso is : ' That corporations . . . . liable to tax on capital stock under this section, shall not be required to pay any further tax on the mortgages, bonds and other securities belonging to them, and constituting any portion of their assets included within the

appraised value of their capital stock,' etc.    Banks and savings institutions are expressly excepted from the provisions of the section, and, therefore, from the proviso which, as will be seen at a glance, is quite different from the conditional exemption clause of § 25.    This difference shows what language the legislature would have used in the latter section if they had intended what the plaintiff claims.

" For these reasons, we answer the third question in the negative, and judgment is directed to be entered for the plaintiff for $286."

*Error assigned* was the entry of judgment for plaintiff for $286, instead of $325.

*Lyman H. Bennett,* for appellant.

*William S. McLean,* for appellee.

PER CURIAM, April 25, 1892:

The opinion of the learned president of the court below is so clear and satisfactory that we adopt it as the opinion of this court.

Judgment affirmed.