CRUSE ET AL., APPELLANTS, *v.* FISCHL, COUNTY TREASURER, RESPONDENT.

(No. 3,939.)

(Submitted September 18, 1918.   Decided November 4, 1918.)

[175 Pac. 878.]

*Taxation—State and County Bonds—Constitutional Law—Statutes—Exemptions—Burden of Proof—"Property"—Public Policy.*

Taxation—Exemptions—Constitution—Self-executing Provisions.
   1.   The provision of section 2, Article XII, of the state Constitution, declaring that the property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries shall be exempt, is self-executing, and denies the legislature authority to tax any property of that class.

Constitution—Nature of Instrument—Authority of Legislature.
   2.   Since the state Constitution is not a grant of authority but a limitation upon the powers of government, the legislature exercises inherent, not delegated, authority.

Taxation—Exemptions—Power of Legislature.
   3.   Under section 2, Article XII, of the state Constitution, the legislature may extend (and has extended) exemption from taxation to property of a *quasi*-public character, *i. e.*, property used exclusively for agricultural and horticultural societies, educational purposes, places of actual religious worship, hospitals and places of burial not used or held for private or corporate profit, and institutions of purely public charity, but cannot extend it to any other.

Same—Property Liable to Taxation.
   4.   Since section 2499, Revised Codes, exempts all property from taxation which, under section 2, Article XII, of the Constitution, may properly be exempted, all other property within the state not thus exempted is liable to taxation.

Same—Exemptions—Rule.
   5.   Taxation is the rule and exemption from it the exception.
   [As to liability of state or municipal bonds to taxation by the state, see note in Ann. Cas. 1914B, 1163.]

Same—Exemptions—State and County Bonds—Burden of Proof.
   6.   In an action to recover taxes on state and county bonds paid under protest as improperly assessed, the plaintiff had the burden of showing that the state cannot tax its public securities when held in private ownership within the state, or that such bonds are not "property" within the meaning of that term as employed in Article XII of the Constitution and the revenue laws of the state, or that the bonds are exempt from taxation.

Same—Power of State.
   7.   Unless restrained by the Constitution of the United States, the state has the power to tax all subjects over which its sovereignty extends.

On the question of liability of municipal bonds to taxation, see note in 12 L. R. A. (n. s.) 1159.

Same—Public Securities—Power of State to Tax.

8. The authority to tax its public securities is inherent in the state, and so long as the method of enforcing the tax does not impair the obligation of the contract between the state and its bondholders and thus runs counter to the United States Constitution, it may exercise its authority in that respect.

Same—Public Securities—Taxability.

9. State and county bonds held in private ownership within the state are "property," within the meaning of that term as employed in the Constitution and revenue laws of the state, and, not being declared exempt, are taxable as such.

Constitution—Statutes—Construction—Rule.

10. Whenever the language of a statute, or of a provision of. the Constitution, is plain, simple, direct and unambiguous, it does not require construction—it construes itself.

Taxation—Exemptions—Presumptions.

11. The taxing power of the state is never presumed to be relinquished; but the intention to relinquish must be expressed in clear and unambiguous terms.

Same—Exemptions—When to be Denied.

12. Every claim for exemption from taxation should be denied unless the exemption is granted so clearly as to leave no room for any fair doubt.

Same—State and County Bonds—Subject to Taxation.

13. State or county bonds are the evidences of debts due to the holder thereof, and when held in private ownership are no longer the property of the state or county, and hence are not exempt from taxation.

Same—Implied Exemption.

14. The doctrine that notwithstanding the plain letter of the law to the contrary there is a presumption, based on public policy, in favor of the exemption of public securities from taxation, does not prevail in Montana.

Public Policy—How Determined.

15. The public policy of this state is determined by the enactments of the legislature, and, in their absence, by the decisions of the courts.

Taxation—Purpose of Legislation.

16. The purpose of tax legislation is to raise the necessary revenue for the support of government and the consequent security of the people in the possession of their property.

Same—Exemptions—Burden of Proof.

17. An exemption from taxation is a release from the obligation to support the government which affords protection to the taxpayer, and he who seeks immunity has the burden of showing that the property claimed to be exempt belongs to a class which is specifically exempt.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Richard Cruse and others, administrators with the will annexed of the estate of Thomas Cruse, deceased, against

E. Fischl, Treasurer of Lewis and Clark County. Judgment for defendant and plaintiffs appeal. Affirmed.

*Messrs. Walsh, Nolan & Scallon,* for Appellants, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

At first blush, under section 2, Article XII, of the Constitution, section 2498, Revised Codes, and section 2499 as amended by Chapter 97 of the Laws of 1911, it would seem that the securities in question are not expressly within the exemption specified. However, having in mind the evils which might result from the taxation of state securities, a reasonable construction of the Constitution would authorize their inclusion. The taxation of state bonds, necessarily, affects their marketability. Indeed, the fact is that if these securities are taxed, the credit of the state will suffer impairment, as, with the interest rates which are provided for in the case of state bonds, it will be rather a difficult matter to dispose of them at par, or else a rate of interest will have to be provided for, which will permit the purchaser to make some profit on the money invested, at the same time paying the tax which will attach. In either case, the state's credit will be injuriously affected. It will be a case where the securities will have to sell below par or else it will be a case where a suspiciously high rate of interest will have to be provided for. (37 Cyc. 883.) In 12 Am. & Eng. Ency. of Law, 373, we find the following: "In Georgia and Louisiana it is considered that, even in the absence of any express exemption, state and municipal bonds are not rendered taxable by general words in reference to taxation, such as that 'all property shall be taxed.'" And the cases referred to in the note sustain the doctrine of the text.

The issuance of municipal securities is an essential of sovereignty. The doctrine is familiar that to tax is to destroy, and in the case of those securities, it would be beyond the power of the federal government to collect a tax on them. (*McCulloch* v. *Maryland,* 4 Wheat. (U. S.) 316, 4 L. Ed. 579.)

We grant that it is within the power of the state to provide for the taxation of its instrumentalities. Our contention is, however, that the general language which we encounter in the Constitution or in the laws of the states does not, necessarily, do this, and public policy forbids that it should be done. We realize that public policy is what the people declare in their fundamental law or by legislative enactment. But, unless there is a plain evident purpose that these agencies, without which the Government could not be carried on, should be taxed, there is every reason why they should not be taxed. (See 12 Am. & Eng. Ency. of Law, p. 367.)

We cite as supporting our contention that notwithstanding the language of the Constitution and statutes, to which reference has been made, public policy requires that public securities should be exempt from taxation, and that in most of the jurisdictions where by legislative enactment they are not expressly declared exempt, the courts have held them so: *Penick* v. *Foster*, 129 Ga. 217, 12 Ann. Cas. 346, 12 L. R. A. (n. s.) 1159, 58 S. E. 773, where cases bearing on the question under consideration are collected.

*Mr. J. B. Poindexter*, Attorney General, and *Mr. J. H. Alvord*, Assistant Attorney General, submitted a brief, in behalf of Respondent; *Mr. Frank W. Woody*, Assistant Attorney General, argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On the first Monday of March, 1915, the estate of Thomas Cruse, deceased, owned Montana state bonds, and bonds of Fergus county, Valley county, Yellowstone county and Carbon county, all of the aggregate value of $207,500. These bonds were assessed at their par value, the tax thereon was paid under protest, and this action was instituted to recover the amount paid. The plaintiffs appealed from an adverse judgment, and

submit for determination the question: Are state and county bonds held in private ownership subject to taxation?

In theory, the burden of taxation ought to be borne by everyone in proportion to the value of his property. In practice it is not always so. Prior to the adoption of our state Constitution, there were few restraints upon the legislature with respect to its power to declare what property should and what should not be taxed, with the result that from time to time certain classes of privately owned property were declared exempt. At the time the constitutional convention assembled the list of exempt property was a formidable one. It will be found in section 1668, Fifth Division, Compiled Statutes of 1887. The abuse of power was manifest and the inequality in taxation plainly apparent. To obviate the difficulties confronting the new state, to provide the necessary revenue for public purposes, and to insure equal and exact justice in the matter of taxation so far as it was then deemed possible, the people withdrew from the lawmakers some of the legislative powers theretofore exercised, and in no uncertain terms prescribed limitations upon the authority to relieve property from its just proportion of the burdens of government.

The subject "Revenue and Taxation" is covered by Article [1] XII, of the Constitution. By section 2 of that Article two classes of property, and only two, were deemed proper subjects of relief from taxation. The first comprises public property— that is, the property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries—and with respect to this property the Constitution declares that it shall be exempt. The second class comprises property of a *quasi*-public character—that is, property used exclusively for agricultural and horticultural societies, educational purposes, places of actual religious worship, hospitals and places of burial not used or held for private or corporate profit, and institutions of purely public charity. The legislature is permitted, but not required, to relieve any or all of the property

of this class from taxation, and it has all been declared to be exempt. (Sec. 2499, Rev. Codes.)

There cannot be a difference of opinion concerning the meaning of the language employed in section 2 above. The authority to tax any property of the first class is denied the lawmakers absolutely. The provision is mandatory in character, is self-executing and the legislation thereafter enacted declaring property of that class exempt added nothing to its force or effectiveness.

When we recall that our Constitution is not a grant of author-
[2, 3] ity, but a limitation upon the powers of government— that our legislature exercises inherent and not delegated authority—the reference to the second class becomes equally explicit. While the language is permissive in form, it is prohibitory in effect. The legislature may extend the exemption to the property enumerated, but it cannot go further or include any other. This is the construction uniformly placed upon such provisions, and is commanded by the rule of interpretation contained in the Constitution itself. (Sec. 29, Art. III.)

Section 2 thus expresses the entire will of the people with
[4] respect to the property absolutely exempt and the extent of legislative power to create exemptions. Section 2499, Revised Codes, is therefore to be construed strictly; that is to say, nothing is to be implied, for the legislation is as broad in its terms as the limitation permits, and in its enactment the lawmakers exhausted their power to relieve property from taxation. All other property within the state is liable to taxation. (Sec. 2498, Rev. Codes.)

As early as 1877 this court declared that taxation is the rule
[5] and exemption the exception (*Hope Min. Co.* v. *Kennon,* 3 Mont. 35), and the principle is given added emphasis by the provisions of the Constitution and statutes above (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386).

In order to escape the tax which has been levied upon these
[6] bonds, appellants must assume the burden of showing (1) that the state cannot tax its public securities when held in

private ownership within the state, or (2) that such bonds are not property within the meaning of that term as employed in Article XII of the Constitution and the revenue laws of the state, or (3) that these bonds belong to one or the other of the two classes of property exempt from taxation.

(1) No court has ever ventured to assert that the state cannot tax such public securities. The power of taxation rests in necessity, is inherent in, and is one of the highest attributes of [7] sovereignty, vital to the very existence of government, and unless restrained by the Constitution of the United States, the authority of the state to subject to taxation all subjects over which the sovereignty extends cannot be questioned. (*Railroad Co.* v. *Pennsylvania*, 15 Wall. 300, 21 L. Ed. 179.) In *McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. Ed. 579, the supreme court of the United States, speaking through Chief Justice Marshall said: "If we measure the power of taxation residing in a state by the extent of sovereignty which the people of a single state possess, and can confer on its government, we have an intelligible standard, applicable to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of a state unimpaired; which leaves to a state the command of all its resources."

In *Murray* v. *Charleston*, 96 U. S. 432, 24 L. Ed. 760, it is said: "Is, then, property, which consists in the promise of a state, or of a municipality of a state, beyond the reach of taxation? We do not affirm that it is. A state may undoubtedly tax any of its creditors within its jurisdiction for the debt due to him, and regulate the amount of the tax by the rate of interest the debt bears, if its promise be left unchanged. A tax thus laid impairs no obligation assumed. It leaves the contract untouched."

There is not any provision in the Constitution of the United States which inhibits a state from taxing its public securities [8] held in private ownership within the state, so long as the statutory method of enforcing the tax does not impair the obligation of the contract between the state and its bondholders.

Our conclusion is that the authority to tax these bonds is inherent in the state.

(2) Has the state assumed to exercise its taxing authority with respect to public securities? The answer must be that it [9] has, if these bonds are property within the meaning of that term as it is employed in the Constitution and laws.

Are the bonds property? At the time our Constitution was written it had been judicially determined in two states of the Union that the term "property," employed in their Constitutions and tax laws, did not comprehend municipal bonds or like public securities held in private ownership, and that such securities were not subject to taxation. In other states the contrary conclusion had been reached, and state bonds had been held to be liable to taxation; while in still other states public securities had been declared to be exempt from taxation by express constitutional or legislative mandate. With this history available to the members of our constitutional convention, and doubtless in their contemplation, they nevertheless included in section 17, Article XII, this significant provision: "The word 'property,' as used in this Article, is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership." We imagine that it would defy the ingenuity of the most profound lexicographer to formulate a more comprehensive definition, and, as if to make assurance doubly sure, the legislature adopted the same definition. (Sec. 2501, Rev. Codes.)

We are not confronted, as were the courts of Louisiana and Georgia, by a contemporaneous construction of the language of our Constitution contrary to the fair import of the language itself. The definition of "property" in section 17 above seems to leave no room for the application of the canons of construction. It is a rule which has been in force in this jurisdiction [10] for more than thirty-five years, that, whenever the language of a statute is plain, simple, direct and unambiguous, it does not require construction, but it construes itself. In other words, it is immaterial what may have been the legislative

thought, if no ambiguity exists in what the lawmakers said, and the language of the statute plainly expresses an intent, the letter of the law will not be disregarded under the pretext of pursuing its spirit. (*King* v. *National M. & E. Co.*, 4 Mont. 1, 1 Pac. 727; *Osterholm* v. *Boston & Mont. Co.*, 40 Mont. 508, 107 Pac. 499.) The same rule is applied in the interpretation of a provision of the Constitution. (*Dunn* v. *Great Falls*, 13 Mont. 58, 31 Pac. 1017.) The bald declaration of our Constitution that the term "property" includes bonds should suffice; but the co-ordination of the word "bonds" with moneys, credits and stocks indicates a determination to subject to taxation every species of bonds held in private ownership within this state possessing any monetary value.

It may be true—and doubtless is true—that by imposing a tax upon its public securities this state places itself at a disadvantage when it goes upon the money market to sell its bonds in competition with other states whose public securities are exempt; but, so long as the power to tax resides in the state, no one can deny its right to exercise the power. These bonds would doubtless sell to better advantage if freed from the burden of taxation; but the same thing is equally true of the public lands owned by the state, and no one would suggest that these lands, when sold to private parties, are not "property" within the meaning of that term as used in the Constitution and statutes. (*Courtney* v. *Missoula County*, 21 Mont. 591, 55 Pac. 359.)

In Georgia it is held that such general expressions as "taxable property" or "all property" do not include state, county or municipal bonds. (*Augusta* v. *Dunbar*, 50 Ga. 387; *Miller* v. *Wilson*, 60 Ga. 505; *Macon* v. *Jones*, 67 Ga. 489; *Penick* v. *Foster*, 129 Ga. 217, 12 Ann. Cas. 346, 12 L. R. A. (n. s.) 1159, 58 S. E. 773.) The same conclusion was reached by a divided court in Louisiana. (*Da Ponte* v. *Board of Assessors*, 35 La. Ann. 651.) The soundness of this conclusion was thereafter questioned, but the decision was followed upon the ground that it had become a rule of property. (*State ex rel. Improvement Co.* v. *Board of Assessors*, 111 La. Ann. 982, 36 South. 91, opin-

ion on rehearing.) By the overwhelming weight of authority, public securities fall within the meaning of the term "property," and, when privately owned, are subject to taxation unless specifically exempt. (*Hall* v. *Middlesex County,* 10 Allen (Mass.), 100; *Bank* v. *Smith,* 7 Ohio St. 42; *People* v. *Insurance Co.,* 29 Cal. 534; *Commonwealth* v. *Maury,* 82 Va. 883, 1 S. E. 185; *People* v. *Commissioners of Taxes,* 76 N. Y. 64, 77; *Bank* v. *Wilkes-Barre,* 148 Pa. 601, 24 Atl. 111; *Bank* v. *Russellville,* 133 Ky. 637, 134 Am. St. Rep. 479, 19 Ann. Cas. 410, 118 S. W. 921; *Jenkins* v. *Charleston,* 5 S. C. 393, 22 Am. Rep. 14, reversed on other grounds, 96 U. S. 449, 24 L. Ed. 760; *Baltimore* v. *State,* 105 Md. 1, 65 Atl. 369; *State* v. *Woodruff,* 37 N. J. L. 139; *Bank* v. *Memphis,* 116 Tenn. 641, 94 S. W. 606.)

No reason is advanced sufficiently cogent to require that the constitutional definition of "property" should be so restricted as to exclude public securities privately owned, and we hold that these bonds are property and subject to taxation unless they are exempt.

(3) Do these bonds belong to either class of property exempt from taxation?

The taxing power of the state is never presumed to be relinquished unless the intention to relinquish is expressed in clear and unambiguous terms. (*Philadelphia etc. R. R. Co.* v. *Maryland,* 10 How. 376, 13 L. Ed. 461; Cooley on Taxation, p. 146.)

Every claim for exemption from taxation should be denied unless the exemption is granted so clearly as to leave no room for any fair doubt. (4 Dillon on Municipal Corporations, 5th ed., sec. 1401.)

It is not contended—and could not be—that these bonds fall within the second class, and they do not fall within the first class, unless it can be said in some sense that they are the property of the state or of the respective counties. These bonds are the evidence of debts due from the state or county, as the case may be, to the holder of the bonds. The public is the debtor and the holder of the securities is the creditor. Can it

be said in any sense that the state bonds owned by the Cruse estate are property of the state of Montana, or that the county bonds are property of the respective counties? We content ourselves by answering in the language of the supreme court of the United States: "But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. * * * This principle might be stated in many different ways, and supported by citations from numerous adjudications; but no number of authorities, and no forms of expression, could add anything to its obvious truth, which is recognized upon its simple statement." (*Railroad Co.* v. *Pennsylvania,* above.)

Our conclusion is that these bonds do not fall within either class of property specifically exempt from taxation.

We are not unmindful of the fact that authorities may be [14] found which hold that, notwithstanding the plain letter of the law, there is a presumption in favor of the exemption of public securities from taxation based upon the theory that public policy requires it; but, in view of the history of our tax legislation before and since the adoption of the Constitution, that doctrine cannot prevail in this jurisdiction. We determine the [15] public policy of this state by reference to the enactments of the lawmaking power, and, in the absence of them, to the decisions of the courts (*Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631), and these authorities are consistently opposed to the theory of implied exemption. No valid reason is suggested why it should prevail here. The owner of state, county or municipal bonds receives the same protection as the owner of real estate, livestock, money or commercial paper. One man invests his capital in state bonds as a source of income and profit. Another, impelled by the same motive, invests in the bonds of a private corporation. Both investments are taxed as property, and the consequence

is that the rate of profit is diminished in each instance. This [16] is the effect, but it is not the object, of tax legislation. Its purpose is, not interference with the rights of borrowers or lenders, but to raise the necessary revenue for the support of the government and the consequent security of the people in the possession of their property.

Our Bill of Rights guarantees to everyone the protection of his property, but this protection carries with it the corresponding obligation to support the government which affords [17] the protection. An exemption from taxation is a release from this obligation, and anyone who seeks the immunity must show that his property belongs to a class which is specifically exempt. (*Kalispell* v. *School District No. 5,* 45 Mont. 221, 122 Pac. 742.)

It may be that in certain sections of this state the total tax exacted equals or exceeds the entire income from public securities; but courts can neither make nor unmake laws, much less hold for naught the express declarations of the Constitution. As has been pertinently remarked: ''There is nothing very poetic about tax laws. Wherever they find property, except what is devoted to public and charitable uses, they claim a contribution for its protection, without any special respect to the owner or his occupation, and without reflecting much on questions of generosity or courtesy.'' (*Finley* v. *Philadelphia,* 32 Pa. St. 381.)

These bonds are liable to taxation. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.