DA 20-0195

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 277

K & J INVESTMENTS, LLC,

        Petitioner, Plaintiff and Appellant,

    v.

THE FLATHEAD COUNTY BOARD OF COUNTY COMMISSIONERS,

        Respondent and Appellee,

    and

FLATHEAD COUNTY TREASURER,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV-19-133C
                Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Anne G. Biby, Hash, O'Brien, Biby & Murray, PLLP, Kalispell, Montana

        For Appellee:

                David W. Randall, Flathead County Deputy Attorney, Kalispell, Montana

                    Submitted on Briefs:  August 19, 2020

                              Decided:  November 4, 2020

Filed:

                    _____
                              Clerk

FILED

11/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0195

Justice Beth Baker delivered the Opinion of the Court.

¶1      K&J Investments, LLC, ("K&J") appeals the Eleventh Judicial District Court's dismissal of its petition and complaint for judicial review, rescission, and unjust enrichment against The Flathead County Board of Commissioners ("Commissioners") and Flathead County Treasurer ("Treasurer") (collectively "County"). K&J challenged the Commissioners' denial of its application for tax refund and abatement due to alleged erroneous property assessments, and it now appeals the District Court's ruling that it lacked subject matter jurisdiction because K&J did not follow the required process for seeking reassessment and exhausting administrative remedies. We hold that the District Court properly dismissed all claims for want of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      K&J is an investment company that pursues investments in tax sale certificates. Under the Montana property tax lien statutes, a person may acquire property by paying the owner's delinquent taxes and purchasing a tax sale certificate from the county in which the property is located. To purchase a tax sale certificate, an investor must pay all delinquent taxes, penalties, interest, and costs associated with the property; to retain its senior status on the property, the investor must continue to pay these amounts for subsequent years for which the taxes remain delinquent. Should the delinquent owner of the property not pay these amounts within the redemption period, the investor will receive a tax deed to the property, which creates a new title extinguishing the interests of the original owner. *See generally* Tit. 15, ch. 17, MCA.

2

¶3    In September 2014, K&J purchased a tax sale certificate from Flathead County for the property at issue, identified as Parcel No. 0192625, for $1,512.68. This initial tax assignment was recorded on September 29, 2014. From 2014 to 2017, the property was classified as residential property, and the resulting taxes for those years amounted to a total of $8,266, which K&J paid as each tax bill became due. K&J received the tax deed to the property during the summer of 2018. It then employed a surveyor to mark the boundary corners of the lot. The surveyor advised K&J that there was no suitable building site on or access to the property because of its topography. K&J's further investigation revealed that the supposed improvements included in the Department of Revenue's ("DOR") 2012 and 2013 property appraisals were nonexistent. The previous property owner never notified the DOR, the agency responsible for conducting appraisals and assessments, of the inaccuracies.

¶4    K&J notified the DOR of its findings in November 2018. The DOR stated that it became aware of the problem from its new assessment of a nearby lot on the same plat. K&J requested that the DOR reappraise and reassess K&J's lot. It also sought to rescind the tax sale certificate with the Treasurer, who declined the request. K&J filed an Application for Property Tax Refund or Abatement with the Commissioners on November 9, 2018, invoking § 15-16-603(1)(a), MCA. That section requires the Commissioners to refund a tax paid "more than once or erroneously or illegally collected." K&J requested a full refund for the years 2013-2016, a partial refund for 2017, and an abatement for a portion of 2017 and for all of 2018, claiming that the DOR erroneously appraised the property as suitable for building. To support its claim, K&J provided

3

photographs of the property, a statement explaining the DOR's reappraisal and reassessment of a nearby lot on the same plat, and a statement explaining the history of its own lot. In a letter to the Commissioners regarding K&J's application, however, the DOR stated that it had "received no documentation regarding any building restrictions" and thus had "no recommendation for a property tax refund."

¶5 The Commissioners held a hearing on January 22, 2019, at which K&J presented evidence of the DOR reappraisal and reassessment of the neighboring lot. The Commissioners denied K&J's application for refund and abatement, reasoning that "[n]o documentation was submitted stating the MT Dept. of Revenue agrees the taxes should be reduced and no documentation was submitted stating the surveyor believes the lot is not buildable."

¶6 K&J filed its petition for judicial review in the District Court on February 15, 2019, seeking to reverse the Commissioners' denial of tax refund and abatement pursuant to § 15-16-604, MCA. K&J included a complaint for rescission of the tax sale certificate and sought relief for all taxes paid under the theory of unjust enrichment. K&J attached to the petition and complaint evidence of the reappraisal and reassessment of the nearby lot and its own surveyor's opinion. Several weeks after K&J filed its complaint, the DOR issued a new appraisal for 2019, noting that "consideration was given to the property's topography for 2019." The new appraisal reflected a value of $30,590, compared to the 2017 and 2018

4

appraisals showing a value of $230,250. The DOR has not reappraised the property for the years 2013-2018, and it declined to do so upon K&J's recent request.[1]

¶7 The County filed a motion to dismiss K&J's petition for judicial review, alleging (1) that the District Court lacked jurisdiction to grant relief based on K&J's failure to follow the administrative appeal process required to cure an alleged erroneous DOR assessment and (2) that the DOR was a necessary party to the action pursuant to § 15-8-115(1), MCA, and K&J failed to name the DOR as a defendant. On December 26, 2019, the District Court issued an Order dismissing the petition and complaint[2] pursuant to Mont. R. Civ. P. 12(h)(3). K&J moved to vacate the Order; the motion was deemed denied after the time for ruling expired. This appeal followed.

## STANDARDS OF REVIEW

¶8 We review a district court's interpretation of the law—here, its determination that it lacked subject matter jurisdiction—to determine whether it is correct. *Schuster v. Nw. Energy Co.*, 2013 MT 364, ¶ 6, 373 Mont. 54, 314 P.3d 650. We examine whether,

---

[1] In a post-judgment motion to vacate the District Court's Order, K&J presented an affidavit that indicated it had:

> met with two representatives of the Department of Revenue and asked them that, if the appropriate request would be made, if they would reappraise K&J's property for the years 2013, 2015 and 2017 under Section 15-7-102(3) or Section 15-8-601. Your affiant was advised that the Department of Revenue would not honor a request to make such reappraisal under Section 15-7-102(3) or Section 15-8-601 since the time to do so had expired and only the property owner at the time the appraisal was made could make such a request.

[2] Although the Order mentioned only the petition for judicial review, the record shows the District Court Clerk's indication that the court intended to dismiss the petition and complaint in its entirety.

5

taking the facts alleged as true and viewing them most favorably to the plaintiff, the district court would have subject matter jurisdiction to consider the claims. *U.S. Nat'l Bank v. Mont. Dep't of Revenue*, 175 Mont. 205, 207, 573 P.2d 188, 190 (1977). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Mont. R. Civ. P. 12(h)(3). "Courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Schuster*, ¶ 7 (quoting *Stanley v. Lemire*, 2006 MT 304, ¶ 32, 334 Mont. 489, 148 P.3d 643). Thus, a court may address the issue of subject matter jurisdiction *sua sponte*. *Stanley*, ¶ 32 (citing *State v. Reeder*, 2004 MT 244, ¶ 4, 323 Mont. 15, 97 P.3d 1104).

**DISCUSSION**

¶9 K&J filed its application for refund and abatement of property taxes with the Commissioners pursuant to § 15-16-603(1), MCA. That section provides in relevant part that "a board of county commissioners shall order a refund: (a) on a tax, penalty, interest, or cost paid more than once or erroneously or illegally collected." The Commissioners denied K&J's application based on the distinction between its duties and the duties of the DOR; because the County did not have any indication from the DOR that the property had been reassessed for the years in question, the Commissioners could not conclude that the taxes were "erroneously . . . collected." On appeal, K&J contends that the District Court had jurisdiction under § 15-16-604, MCA, to review the Commissioners' denial of its application for refund and abatement of taxes under § 15-16-603(1)(a), MCA. K&J additionally argues that the court had general jurisdiction to hear its rescission and unjust

enrichment claims. The Commissioners argue that the District Court properly dismissed the petition and complaint for want of jurisdiction because K&J failed to exhaust its administrative remedies.[3]

1. *Did the District Court err in dismissing K&J's petition for judicial review for lack of subject matter jurisdiction?*

¶10 "Subject-matter jurisdiction is the power of a court to hear and adjudicate a particular type of controversy. Montana courts derive subject-matter jurisdiction from constitutional and statutory authority." *Harrington v. Energy W. Inc.*, 2015 MT 233, ¶ 13, 380 Mont. 298, 356 P.3d 441 (internal citations omitted). District courts are courts of general jurisdiction, but only the Legislature may provide them subject matter jurisdiction for direct review of administrative decisions. Mont. Const. art. VII, § 4(2); *see also N. Plains Res. Council v. Bd. of Health & Envtl. Scis.*, 184 Mont. 466, 471, 603 P.2d 684, 687 (1979).

¶11 The Montana Constitution vests the State with the sole authority to appraise, assess, and equalize the valuation of all property taxed in Montana. Mont. Const. art. VIII, § 3. The Constitution requires local taxing jurisdictions to "use the assessed valuation of property established by the state." Mont. Const. art. VIII, § 4. Finally, the Constitution tasks the Legislature with creating independent appeal procedures for taxpayer grievances

---

[3] K&J's Opening Brief also argues that the District Court erred in permitting time for ruling to expire on its Rule 60 Motion. We decline to address this issue because K&J failed to provide adequate explanation of its argument on appeal. *Stevens v. Novartis Pharm. Corp.*, 2010 MT 282, ¶ 85, 358 Mont. 474, 247 P.3d 244 (citations omitted) (noting that "it is not [this Court's] obligation to conduct legal research, guess at precise positions, or develop legal analysis that may lend support to the parties' positions").

about appraisal, assessment, equalization, and tax determinations. Mont. Const. art. VIII, § 7; *see also* § 15-15-102, MCA (providing for application to the County Tax Appeal Board ("CTAB") for reduction in property valuation); § 15-7-102, MCA (providing for DOR notice to property owner of classification, market value, and taxable value of property and a process for owner objection and appeal to the CTAB and then to the State Tax Appeal Board ("STAB")).

¶12    The Legislature has designed a detailed property tax process around these general constitutional delegations, maintaining the DOR's responsibility to appraise and assess taxable property and the counties' responsibilities to collect property taxes and to distribute monies to taxing jurisdictions. *Zinvest, LLC v. Gunnersfield Enters.*, 2017 MT 284, ¶ 14, 389 Mont. 334, 405 P.3d 1270; *see also* § 15-7-101, MCA (assigning the DOR the duty to classify all taxable lands, appraise taxable city and town lots, and appraise taxable rural and urban improvements); § 15-8-101, MCA (assigning to DOR the "full charge of assessing all property subject to taxation . . ."). We described in *Zinvest* the difference between the processes of "assessment" and "taxation" and the entities that administer them:

> Although the entire process . . . is often referred to as 'taxation,' there are distinct stages. 'Assessment is the process by which persons subject to taxation are listed, their property described, and its value ascertained and stated. Taxation consists in determining the rate of the levy and imposing it.' Under current law, assessment is entirely the responsibility of the Department. Collection and enforcement are the responsibility of county treasurers.

*Zinvest*, ¶ 17 (internal citations omitted). Where a tax is erroneously collected, the County refunds the payment of taxes under the authority of § 15-16-603(1)(a), MCA. But if the amount of tax collected was based on an error, for example, in the "description of . . . real

8

property or improvements," that process starts with the DOR under § 15-8-601, MCA, and the County issues a refund under § 15-16-603(1)(c), MCA, following the DOR's determination.

¶13    The language of these code provisions reaches back to the first legislative act following the 1889 Montana Constitution's ratification. The phrase "paid more than once or erroneously or illegally collected" found in § 15-16-603(1)(a), MCA, appeared in *An Act Concerning Revenue*, 2d Leg. Assemb., Reg. Sess., § 145 (March 6, 1891) ("Revenue Act") ("[a]ny taxes, per centum, and costs, paid more than once or erroneously or illegally collected, may by order of the Board of County Commissioners, be refunded by the County Treasurer . . .."). As the District Court observed, this language was specific to irregularities in the *collection* of taxes, while §§ 146 and 147 of the Revenue Act addressed duplicates of or irregularities in *assessments*, thereby separating these distinct processes. Revenue Act, § 146 (more than one assessment), § 147 (discovery of irregular assessment). At that time, the counties were tasked with both processes—with the county boards of commissioners additionally serving as county boards of equalization. Revenue Act, §§ 60-61. But the adoption of the 1972 Montana Constitution led to elimination of all references to county boards of equalization, and it split the two processes between the counties and the State. Mont. Const. art. VIII, § 3. The Legislature centralized within the DOR all appraisal and assessment duties relating to property taxation. *See* §§ 15-7-101, 15-8-101, MCA; *see also* H.B. 50, Statement of Intent, Ch. 27, 53d Leg., Sp. Sess. (November 1993) (recognizing the 1972 Constitution's delegation of authority to the State for appraisal, assessment, and valuation of property for property tax administration, stating

9

the intent for the DOR to assume this duty, and retaining county assessors to assist the DOR as its agents in carrying out this duty).

¶14 The statute's plain language and context thus make clear that the administrative pathway for property assessment, reassessment, and assessment appeals generally is a person's exclusive remedy for alleged excessive or erroneous assessments. *See Keller v. Dep't of Revenue*, 182 Mont. 478, 484, 597 P.2d 736, 739-40 (1979) (citing *Larson v. State*, 166 Mont. 449, 456-57, 534 P.2d 854, 858 (1975)); *Dep't of Revenue v. Countryside Vill.*, 205 Mont. 51, 64-66, 667 P.2d 936, 942-43 (1983). Although we have recognized limited exceptions where fraud or the adoption of a "fundamentally wrong principle of assessment" is shown, those exceptions do not apply where, as here, "the principal thrust of the complaint is aimed at the *amount* of valuation and not the method of valuation." *Devoe v. Missoula County*, 226 Mont. 372, 376, 735 P.2d 1115, 1117 (1987) (quoting *Larson*, 166 Mont. at 457, 534 P.2d at 858).

¶15 The Commissioners may issue a tax refund based on alleged erroneous assessments only after the DOR, the CTAB, or the STAB determines that a refund is owed. Instead of following this pathway, K&J would have us find a direct remedy available from the Commissioners under § 15-16-603(1), MCA, and a judicial remedy under § 15-16-604, MCA; but these provisions do not allow an end run around the DOR or the boards of tax appeal. As K&J acknowledges, the DOR declined to retroactively revise its assessment of the property because the property was not "under the ownership or control of the same person who owned or controlled it at the time it . . . was erroneously assessed." Section 15-8-601, MCA. Absent direction from the DOR, § 15-16-603(1), MCA, provides

10

no authority to the Commissioners; it follows that the District Court cannot obtain jurisdiction for judicial review under § 15-16-604, MCA. *See also Devoe*, 226 Mont. at 376, 735 P.2d at 1117 (quoting *Larson*, 166 Mont. at 457, 534 P.2d at 858) ("[t]ax appeal boards are particularly suited for settling disputes over the appropriate valuation of a given piece of property or a particular improvement, and the judiciary cannot properly interfere with that function").

¶16 K&J argues that "the reason giving rise to the erroneous tax is totally immaterial" and that the Commissioners must have authority to assess property value because the Legislature's conference of jurisdiction also necessarily confers "all the means necessary for the exercise of such jurisdiction." Section 3-1-113, MCA. This argument overlooks the plain language analysis of the governing statutes and our obligation to consider those statutes in the context of the entire statutory scheme. *See Albright v. State*, 281 Mont. 196, 206, 933 P.2d 815, 821 (1997) ("when we construe a statute, 'the whole act must be read together and where there are several provisions or particulars, a construction is, if possible, to be adopted that will give effect to it all.' . . . '[T]he Court must harmonize statutes relating to the same subject, giving effect to each.'") (internal citations omitted).

¶17 We agree with the District Court that the cases K&J cites to support its arguments are entirely distinguishable. *Christofferson v. Chouteau County*, 105 Mont. 577, 74 P.2d 427 (1937), did not involve erroneous property valuation but the erroneous collection of a tax where the county treasurer failed to cancel tax assessments as directed. *Christofferson*, 105 Mont. at 579, 74 P.2d at 428. Unlike *Christofferson*, the process of valuation and who may conduct it are directly at issue here. The case provides no support

11

for K&J's argument that the Commissioners or the District Court may determine independently a reappraisal or reassessment.

¶18    Although *Dep't of Revenue v. Jarrett*, 216 Mont. 189, 700 P.2d 985 (1985), did involve an erroneous property valuation, it too is distinguishable; there, neither the county commissioners nor the district court were asked to reappraise or reassess the property. In *Jarrett*, the DOR reappraised the property and provided a reduced assessment value. *Jarrett*, 216 Mont. at 191, 700 P.2d at 986. Upon receipt of the petitioner's application for tax refund and the DOR's input regarding its reason for the reduced assessment, the county commissioners denied the application, concluding that the value was decreased due to a change in development pattern, not to an erroneous assessment. *Jarrett*, 216 Mont. at 191, 700 P.2d at 986. Following appeals to the CTAB and then to the STAB, which both reversed and held in favor of the petitioner, the DOR sought judicial review. *Jarrett*, 216 Mont. at 191, 700 P.2d at 986. Thus, neither the county commissioners nor the district court undertook a property reappraisal or reassessment, and the taxpayer followed the proper appeal process. If anything, *Jarrett* demonstrates the proper procedure for seeking tax refunds due to erroneous assessments and makes clear that K&J's approach was flawed.

¶19    The District Court correctly concluded that § 15-16-603(1)(a), MCA, "does not support the argument that a board of county commissioners can substitute its valuation of real property for that of the DOR, and such an interpretation would run afoul of the centralization of the appraisal power in the hands of the DOR." Section 15-16-603(1)(a), MCA, does not allow county commissioners to hear grievances

12

regarding appraisals or assessments of property for tax purposes. The District Court properly dismissed K&J's petition for judicial review for lack of subject matter jurisdiction.

2. *Did the District Court err in dismissing K&J's complaint for lack of subject matter jurisdiction?*

¶20 Our disposition of issue one controls the resolution of this issue. Because all claims are based on the same set of facts and allegations, the claims for rescission and unjust enrichment would require the District Court to make a determination that the 2013-2018 DOR appraisals and assessments were erroneous—again, without any DOR reappraisal or reassessment or ruling from the CTAB or the STAB. The District Court cannot make these determinations without exhaustion of remedies through the DOR, the CTAB, and the STAB. *Keller*, 182 Mont. at 484, 597 P.2d at 739-40.

¶21 The District Court thus properly dismissed the unjust enrichment and recission claims for lack of subject matter jurisdiction due to a failure to exhaust the relevant administrative remedies.

## CONCLUSION

¶22 We conclude that § 15-16-603(1)(a), MCA, does not grant the Commissioners authority to make determinations regarding property appraisals or assessments. Without a determination by the DOR or exhaustion of remedies through the County and State Tax Appeal Boards, § 15-16-604, MCA, did not grant the District Court authority to consider K&J's claims. We accordingly affirm the District Court's dismissal of K&J's petition and complaint pursuant to Montana Rule of Civil Procedure 12(h)(3).

/S/ BETH BAKER

13

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON