FILED

06/09/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: AC 17-0694

Amy Eddy, District Judge
Department No. 1
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, Montana 59901
(406) 758-5906

## IN THE ASBESTOS CLAIMS COURT OF THE STATE OF MONTANA

| | |
|---|---|
| IN RE ASBESTOS LITIGATION, | Cause No. AC 17-0694 |
| *Consolidated Cases.* | ORDER RE: DEFERRED DOCKET<br>*This Order is Certified as a Final Order*<br>*for Purposes of Appeal* |

On September 13, 2018, the Asbestos Claims Court (ACC) issued its *Order Re: Plaintiffs' Motion for Deferred Docket*. It is now apparent that the Deferred Docket, while the best solution based on the position of the parties at the time, has created an untenable sideshow that has detracted the resources of the parties, counsel, and the ACC.

The pending motions before the ACC accurately reflect this reality: *BNSF's Combined Motion Regarding Deferred Docket Issues*, dated 11/9/2018; *BNSF's Rule 41(b) Motion to Dismiss*, dated 5/13/2019; *BNSF's Renewed Rule 41(b) Motion to Dismiss*, dated 4/16/2020; *BNSF's Renewed Motion for Show Cause Order Related to a CARD Diagnosis of ARD*, dated 4/16/2020; *BNSF's Motion to Dismiss 103 Personal Representative Claims on the Deferred Docket*, dated 4/16/2020; *McGarvey Law Plaintiffs' Motion for Relief from Deferred Docket Order Due to COVID-19*, dated 5/15/2020; *McGarvey Law Plaintiffs' Motion for Claim Registry for Plaintiffs Willing to Forego Claims for Present Damages*, dated 5/15/2020; and *McGarvey Law Plaintiffs' Motion for Additional Parameters Re: Court's Mandatory Settlement Conference*, dated 10/6/2020.

These motions were all fully briefed and came before the Court for oral argument on May 17, 2021. Since the oral argument, the parties have continued to attempt to maneuver their way around these issues with additional briefing. Having reviewed the file and being fully apprised, the Court hereby rules as follows:

## ORDER

(1)    Consistent with the below Rationale, all claims on the Deferred Docket are DISMISSED without prejudice unless a *Motion to Activate* is filed by October 29, 2021;

(2)    *BNSF's Combined Motion Regarding Deferred Docket Issues*, dated 11/9/2018, is DENIED as moot;

1

(3)     *BNSF's Rule 41(b) Motion to Dismiss*, dated 5/13/2019, is DENIED as moot;

(4)     *BNSF's Renewed Rule 41(b) Motion to Dismiss*, dated 4/16/2020, is DENIED as moot;

(5)     *BNSF's Renewed Motion for Show Cause Order Related to a CARD Diagnosis of ARD*, dated 4/16/2020, is DENIED as moot;

(6)     *BNSF's Motion to Dismiss 103 Personal Representative Claims on the Deferred Docket*, dated 4/16/2020, is GRANTED in part, subject to the below Rationale;

(7)     *McGarvey Law Plaintiffs' Motion for Relief from Deferred Docket Order Due to COVID-19*, dated 5/15/2020, is DENIED as moot;

(8)     *McGarvey Law Plaintiffs' Motion for Claim Registry for Plaintiffs Willing to Forego Claims for Present Damages*, dated 5/15/2020, is DENIED;[1] and

(9)     *McGarvey Law Plaintiffs' Motion for Additional Parameters Re: Court's Mandatory Settlement Conference*, dated 10/6/2020, was GRANTED at the oral argument, but is now MOOT.

(10)    *Plaintiffs' Supplemental Response to Court's Query at May 17, 2021 Hearing*, is DENIED as MOOT.

## RATIONALE

### A.     Factual Background

The factual background of these issues is extensive and well-known to the Court and the parties and is substantively the same as it was when the Court entered its *Order Re: Plaintiffs' Motion for Deferred Docket*—which is incorporated herein and attached as Exhibit A for convenience.

The Deferred Docket sought to solve the problem of an otherwise healthy individual who, at the behest of public health officials due to potential asbestos exposure, attends a mass health screening at the Center for Asbestos Related Disease ("CARD Clinic"). This individual subsequently receives an Asbestos Related Disease (ARD) diagnosis but has no symptoms or impairment relating to that diagnosis.

The individual waits almost three years to file a complaint, until they are up against the statute of limitations; and then waits almost another three years to serve the complaint. The only reason the individual filed a complaint is they fear the statute of limitations has been triggered by the ARD diagnosis. The purpose of this waiting period is to examine whether the individual will begin to suffer any symptoms or impairment related to the ARD diagnosis, or whether they will

---

[1] The ACC has previously determined it has neither the statutory authority, nor resources, to create a claims registry, and such a process can only be authorized and funded by the Legislature.

be diagnosed with a separate second injury related to the same asbestos exposure—asbestosis, mesothelioma, cancer, etc.

In the ordinary course the case would proceed toward trial based on the individual's current injury—emotional distress, fear of developing a future injury, insurability, etc., arising out of the ARD diagnosis. These damages would be difficult to establish because there is no way to predict who will ultimately develop symptoms or impairment related to the ARD diagnosis, or who may develop a future second injury. These damages would also be insufficient to compensate the individual should they later develop a second injury.

So, instead of forcing these cases to trial based on current injuries (which may be nominal and exceeded by litigation costs), these cases were instead moved onto the Deferred Docket. While on the Deferred Docket, limited discovery could be conducted, and the individual was required to undergo periodic medical monitoring. When the individual reached a certain level of impairment, or received a second injury diagnosis, they were required to move their case onto the Active Docket to be assigned for trial. The expectation was the Deferred Docket would conserve the resources of all participants.

However, the status of the Deferred Docket has been in constant flux. Individuals have died of unrelated causes. Some have elected to place their case on the Active Docket. Others have actively resisted efforts for their case to be placed on the Active Docket. The appropriate threshold medical criteria for placement on the Active Docket has been difficult to establish. Determining whether a particular individual has met the medical criteria is even more challenging—for example, what if the individual received a compromised pulmonary function test but it was because they had a cough, cold, or allergies, not a progression of their ARD diagnosis? Defendants have also struggled with being able to conduct discovery on cases that have been effectively stayed.

At this point in time there are three options moving forward for the management of the cases on the Deferred Docket:

(1) Proceed with the status quo of the existing Deferred Docket, the creation of which was not challenged by the parties. This *would require the judiciary to bring significantly greater resources to the ACC than has previously been allocated*.

(2) Abolish the Deferred Docket and allow all current cases to go to trial on the individual's current damages and foreclose any future recovery for a future second injury. This would likely be the result under current Montana law.

(3) Abolish the Deferred Docket and allow all current cases to go to trial on the individual's current damages and preserve their right to file an additional cause of action if in the future they suffer a second injury, distinct from the ARD diagnosis but related to the same asbestos exposure. This would require Montana to adopt a Second Injury Rule.

3

As to options 2 and 3, if an individual wanted to pursue a claim for current damages, they would do so by filing a *Motion to Activate* by a certain date. Any cases that did not have a *Motion to Activate* filed by the deadline would be dismissed without prejudice and the Deferred Docket would thereby be abolished.

The briefing on the pending motions offers additional detail of the challenges the Deferred Docket has imposed. The Court will incorporate additional facts below as are necessary for the legal analysis.

**B.      Legal Analysis**

As outlined below, the Court believes the best way to proceed with the cases on the Deferred Docket is option 3 above.

**(1)      Adoption of Second Injury Rule and *Sua Sponte* Dismissal of Deferred Docket Claims Without Prejudice**

The Deferred Docket embodies the undeniable tension between an ARD diagnosis arising out of community screenings from the CARD Clinic, and accrual of damages for statute of limitation purposes. The Montana Supreme Court's cases law on the running of the statute of limitations in latent disease cases is not instructive, because in those cases the individuals had an impairment or symptoms—but not a diagnosis. *See Kaeding v. W.R. Grace & Co.-Conn.*, 1998 MT ¶¶19-24, 298 Mont. 343, 961 P.2d 1256; *Hando v. PPG Industries, Inc.*, 236 Mont. 493, 771 P.2d 956 (1989). These facts present the opposite scenario—the plaintiffs have a diagnosis and no impairment.

Creation of the Deferred Docket assumed the ARD diagnosis from the CARD Clinic triggered the statute of limitation for all future diagnoses—asbestosis, mesothelioma, cancer, etc., which are independent diagnoses from ARD. The Deferred Docket was intentionally cautious, as the Montana Supreme Court has not adopted the Second Injury Rule. Under the Second Injury Rule, if an individual resolves their ARD claim, but later develops mesothelioma (for example) as a result of the same asbestos exposure, they are allowed to bring a second claim for damages that is not subject to the statute of limitations for the first diagnosis.

However, experience has demonstrated this approach has done a disservice to the parties, counsel and the ACC itself.

The Court accepts Plaintiffs' counsel offer at oral argument to make a declaratory ruling that a diagnosis of an ARD from the CARD Clinic, without further medical findings or symptoms, is insufficient to trigger the statute of limitations for any future diagnoses.

This finding comports with existing Montana law. *See* Mont. Code Ann. §27-2-102; *Uhler v. Doak*, 268 Mont. 191, 885 P.2d 1297 (1994); *Massee v. Thompson*, 2004 MT 121, 321 Mont. 210, 90 P.3d 394; *Hendricksen v. State*, 2000 MT 20, 319 Mont. 307, 84 P.3d 38. It is also consistent with jurisprudence from other jurisdictions adopting a Second Injury Rule. *See Gaillard v. Bayer Corp.*, 986 F. Supp. 2d 241, 248, fn 5 (2013) (finding that under New York's

4

second-injury rule, "diseases that share a common cause may nonetheless be held separate and distinct where their biological manifestations are different and where the presence of one is not necessarily a predicate for the other's development.").

"The judicial power of Montana's courts, like the federal courts, is limited to 'justiciable controversies.'" *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶6, 355 Mont. 142, 226 P.3d 567 (citing *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶22, 353 Mont. 201, 219 P.3d 881). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Mont. R. Civ. P. 12(h)(3). "Courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. Thus, a court may address the issue of subject matter jurisdiction *sua sponte*." *K & J Invs., LLC v. Flathead Cty. Bd. of Cty. Comm'Rs*, 2020 MT 277, ¶8, 402 Mont. 33, 476 P.3d 20 (internal citations omitted).

As a cause of action has not accrued, there is no ripe case or controversy triggering the Court's jurisdiction over these Deferred Docket cases in perpetuity. "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Rule 12(h)(3), M.R.Civ.P.; *Moody's Mkt., Inc. v. Mont. State Fund*, 2020 MT 217, ¶18, 401 Mont. 168, 471 P.3d 68 (citing *Plan Helena*, ¶12 for the proposition that "once a court no longer has before it a justiciable case or controversy, it is required to dismiss the action at that point.").

Accordingly, all causes of action on the Deferred Docket will be dismissed without prejudice unless the Plaintiffs file a *Motion to Activate* by October 29, 2021. If a *Motion to Activate* is filed, the case will proceed to trial with a claim for present damages, if any.

### (2)    Pending Motions

This *Order* largely negates the pending motions before the Court. The Court declines to sanction any party for failure to comply with the terms of the Deferred Docket. BNSF's objection to the claims of Personal Representative remaining on the Deferred Docket was well-taken at oral argument, as conceded by Plaintiffs, and has been addressed in this *Order*.

Regarding discovery actions taken by BNSF on the active docket cases that have not been set for trial, the undersigned leaves the trial management of those cases to the other Asbestos Claims Court Judges.

### CONCLUSION

Having no authority to certify this question to the Montana Supreme Court under Rule 15(3), M.R.App.P., the ACC encourages the appeal, or application for a writ of supervisory control, of this *Order* to the Montana Supreme Court. The Court certifies this *Order* as a final order for purposes of appeal.

It is necessary for the parties, counsel and the ACC to have clarity and confidence moving forward that litigation of future claims based on a separate diagnosis will not be

5

foreclosed in the event a plaintiff either dismisses without prejudice, or litigates to its conclusion, their claim for present damages based on the CARD Clinic's ARD diagnosis.

DATED AND ELECTRONICALLY SIGNED AS NOTED BELOW.