DA 20-0319

FILED

06/29/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0319

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 155

BOYNE USA, INC.,

      Petitioner, Appellee and Cross-Appellant,

    v.

DEPARTMENT OF REVENUE OF THE STATE OF MONTANA,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DV-29-2019-48
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brendan R. Beatty, Teresa G. Whitney, Special Assistant Attorneys
General, Montana Department of Revenue, Helena, Montana

      For Appellee:

          Michael Green, Dale Schowengerdt, D. Wiley Barker, Crowley Fleck
PLLP, Helena, Montana

Submitted on Briefs:  March 24, 2021

Decided:  June 29, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    The Department of Revenue of the State of Montana (Department) appeals summary judgment entered by the Fifth Judicial District Court, holding that the "Resort Service Fee" Boyne USA, Inc. (Boyne) charges guests is not subject to Montana's Lodging Facilities Use Tax (Use Tax) and forfeited guest deposits collected by Boyne are not subject to either the Montana's Use Tax or Sales Tax (Sales Tax). Boyne cross-appeals the District Court's determination that Boyne's Resort Service Fee is subject to the Sales Tax.

¶2    We state the issues as follows:

1. *Did the District Court err by holding that Boyne's Resort Services Fee is not subject to the Lodging Facilities Use Tax, §§ 15-65-101 through 136, MCA?*

2. *Did the District Court err by holding that the Resort Services Fee is subject to the Sales Tax, §§ 15-68-101 through 15-68-820, MCA?*

3. *Did the District Court err by holding that forfeited guest deposits are not subject to the Lodging Facilities Use Tax or the Sales Tax?*

We affirm the District Court.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    The facts of the summary judgment record are as follows. Boyne owns and operates Big Sky Resort in Big Sky, Montana. Big Sky Resort offers lodging accommodations, upon which sales Boyne collects both the Use Tax and Sales Tax. At booking, as stated on its guest receipts, Boyne assesses guests the Resort Services Fee, a "7% [charge] on accommodations," which is separately labeled as "Fees/Gratuities." Boyne provides guests with various amenities at the resort in exchange for the fee, such as "Kids Club" children's activities, ski patrol dog demonstrations, movies, access to tennis courts, complimentary

2

summer boat rentals, summer ski lift rides, and shuttle transportation. The Montana Tax Appeal Board found that the proceeds from the fee supplement Boyne's "private financing to fund the design and improvement to the resort infrastructure, facilities and services." Boyne deposits funds collected for the Resort Services Fee into its general fund.

¶4 Boyne requires payment of a non-refundable deposit 30 days prior to arrival in an amount of up to the total estimated charge for the guest's visit, including both the room accommodation charges and amenity fees. At booking, Boyne informs guests that "taxes and resort fees" will be assessed upon "Lodging Only," specifically, 4% of the accommodation charge for the Use Tax and 3% for the Sales Tax.[1] If a guest cancels their reservation within thirty days of check-in, Boyne does not refund the deposit,[2] nor remits any of the amounts assessed for taxes to the Department.

¶5 In 2017, the Department audited Boyne for a five-year period between 2011 and 2016. The determination from the audit was that Boyne owed the State of Montana $685,505.68 for "Lodging Facility Use Taxes, Sales Taxes, interest and penalties for the entirety of the audit period."[3] Specifically, the audit concluded that Boyne's Resort Service

---

[1] Boyne's 7% Fee is premised upon a 4% charge for the Use Tax and a 3% charge for the Sales Tax. Under statute, both taxes are 4%. *See* § 15-65-111(1), MCA, and § 15-68-102(1), MCA, respectively.

[2] Boyne partially refunds deposits for cancellations made prior to the thirty-day window.

[3] The Department administers the Use Tax and Sales Tax collectively as the "Lodging Tax." *See* Admin. R. M. 42.14.101(5) (2011) (defining "Lodging facility sales and use tax" to mean the "4 percent lodging facility use tax, as it applies to Title 15, chapter 65, MCA, and the 3 percent sales tax, as it applies to Title 15, chapter 68, MCA").

Fee and the collected, but forfeited deposits, were subject to taxation. Upon receipt of the audit determination, Boyne requested an informal review with the Department, after which the Department adopted the audit's findings and conclusions. On January 18, 2018, Boyne paid the taxes under protest to arrest the accrual of penalties and interest. The parties stipulated that the Department's determination was the final agency decision, and Boyne appealed to the Montana Tax Appeal Board (MTAB).[4] The parties each filed motions for summary judgment and argued those motions on April 23, 2019.

¶6 On June 12, 2019, MTAB issued "Summary Judgment Findings of Fact, Conclusions of Law, Order and Opportunity for Judicial Review." MTAB ruled Boyne was obligated to pay both the Use Tax and Sales Tax on its Resort Service Fee, because the Fee, a mandatory charge to guests, is "integral" to use of the room, making it an "accommodation charge" under the statutes, and subject to both taxes. However, MTAB ruled Boyne does not owe a tax obligation under either the Use Tax or Sales Tax on forfeited guest deposits.

¶7 Boyne petitioned the District Court for judicial review, and both parties moved for summary judgment. The District Court reversed MTAB's determination that Boyne's Resort Service Fee is subject to the Use Tax because the fee is assessed for non-lodging purposes. The District Court affirmed MTAB's determination that the Resort Service Fee

---

[4] The Montana Tax Appeal Board is the new name for what was formerly the State Tax Appeal Board, known conveniently for decades as "STAB." *See K & J Invs., LLC v. Flathead Cty. Bd. of Cty. Comm'rs*, 2020 MT 277, ¶ 11, 402 Mont. 33, 476 P.3d 20.

4

is subject to the Sales Tax and also affirmed its ruling that forfeited deposits are not subject to either tax.

¶8 The Department appeals, challenging the District Court's holding that the Resort Service Fee is not subject to the Use Tax, and that forfeited deposits are not subject to taxation. Boyne cross-appeals, challenging the District Court's holding that its Resort Service Fee is subject to the Sales Tax.

## STANDARD OF REVIEW

¶9 "Taxes shall be levied by general laws for public purposes." Mont. Const. art. VIII, § 1. The Montana Legislature prescribes taxation on individuals and businesses to raise revenue for the "objects and purposes for which governments are instituted and organized, viz.: the guarantee and protection of individual rights, and the security and enjoyment of private property." *Hope Mining Co. v. Kennon*, 3 Mont. 35, 37 (1877).

¶10 "We review STAB's decision in the same manner as the District Court." *Ruby Mountain Trust v. Department of Revenue of the State of Mont.*, 2000 MT 166, ¶ 13, 300 Mont. 297, 3 P.3d 654 (citing § 2-4-704, MCA). Our review is confined to the record. Section 2-4-704(1), MCA. "The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 2-4-704(2), MCA. "The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced." Section 2-4-704(2), MCA.[5]

_____

[5] Substantial rights are prejudiced by "administrative findings, inferences, conclusions, or decisions" that are:

¶11 "We review summary judgment orders de novo." *Montana Dep't of Revenue v. Priceline.com, Inc.*, 2015 MT 241, ¶ 6, 380 Mont. 352, 354 P.3d 631 (citing *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

¶12 "The interpretation of a statute is a question of law that we review for correctness." *Priceline*, ¶ 6 (citing *City of Missoula v. Iosefo,* 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180).

> In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.

Section 1-2-101, MCA. "[S]tatutory language must be construed according to its plain meaning and, if the language is clear and unambiguous, no further interpretation is required." *Priceline*, ¶ 6 (citing *Infinity Ins. Co. v. Dodson,* 2000 MT 287, ¶ 46, 302 Mont. 209, 14 P.3d 487); *see also Ominex Can., Ltd. v. State of Mont., Dep't of Revenue*, 2008

---

in violation of constitutional or statutory provisions; in excess of the statutory authority of the agency; made upon unlawful procedure; affected by other error of law; clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or findings of fact, upon issues essential to the decision, were not made although requested.

Section 2-4-704(2)(a), MCA (subsection markers omitted).

6

MT 403, ¶ 21, 347 Mont. 176, 201 P.3d 3 (citing *Western Energy Co. v. State of Mont.,*

*Dep't of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, 990 P.2d 767) (stating that legislative

intent is gleaned from the statute's plain meaning). "[T]ax statutes are to be strictly

construed against the taxing authority and in favor of the taxpayer." *Omimex*, ¶ 21 (citing

*Western Energy*, ¶ 10).

## DISCUSSION

¶13    *1.  Did the District Court err by holding that Boyne's Resort Services Fee is not subject to the Lodging Facilities Use Tax, §§ 15-65-101 through 136, MCA?*

¶14    The District Court concluded that, under the plain language of the statutes, the

"Resort Service Fee is not an accommodation charge and is thus not subject to the Facility

Use Tax" because the tax is explicitly imposed only upon "charges pertaining to

accommodations for sleeping and resting at the resort." Further, it reasoned that nothing

in the statutes requires a "fee to be voluntary or non-integral in order to fall outside the

definition of accommodation charge." The Department argues Boyne's Resort Services

Fee is taxable because the fee's mandatory, non-waivable structure is an "integral part of

the accommodations charge" for use of the resort, basing this argument upon its reading of

§ 15-65-111, MCA, along with Admin. R. M. 42.14.202(3) (2010). In response, Boyne

argues the Resort Services Fee is not taxable because it is not a charge for lodging, thus

not an accommodation charge as defined by statute, and is expressly excluded from

taxation.

¶15    Montana's Use Tax is found in Title 15, Chapter 65, MCA. The Use Tax largely

funds Montana's tourism industry, § 15-65-121(2), MCA, by taxing the "user of a facility

on the amount that an 'owner or operator' of the 'facility' charges *for a room*." *Priceline*, ¶ 16 (emphasis added). The statute provides, "[t]here is imposed on the user of a facility a tax at a rate equal to 4% of the accommodation charge collected by the facility." Section 15-65-111(1), MCA. A "facility" is any "building containing individual sleeping rooms or suites, providing *overnight lodging* facilities for periods of less than 30 days to the general public for compensation." Section 15-65-101(4)(a), MCA (emphasis added). The "accommodation charge" to which the Use Tax is applied is the amount charged to a guest "for use of the facility *for lodging*." Section 15-65-101(1), MCA (emphasis added). Explicitly exempted from the statutory definition of "accommodation charge" are "charges for meals, transportation, entertainment, or any other similar charges," § 15-65-101(1), MCA, and "charges for rooms used for purposes other than lodging." Section 15-65-111(2), MCA. Thus, under the foregoing statutes, the Legislature has assessed a 4% Use Tax on a "user of a facility" who uses the facility "for lodging," while excluding from the tax other charges, including "meals, transportation, entertainment, or any other similar charges" and "charges for rooms used for purposes other than lodging." As Boyne notes, the tax is commonly referred to as the "Bed Tax."

¶16 Under the plain meaning of the Use Tax statutes, Boyne's Resort Service Fee is not subject to the Use Tax because it is not an "accommodation charge" for using Boyne's lodging facilities. The Resort Service Fee is squarely excluded from definition of "accommodation charge" in § 15-65-101(1), MCA, because the Fee is a charge for non-lodging purposes. The Department argues the Legislature intended "accommodation

8

charge" to mean "the fee charged by the owner or operator of a [resort] for use of the [resort]," (brackets in original), and thus must include Boyne's assessment of the Resort Service Fee for amenities, but this interpretation extends the application of the accommodation charge to purposes other than lodging. In other words, while lodging is a "use of the resort," not all "uses of the resort" are lodging.

¶17 The Department has attempted to further define the statutory exclusion from the accommodation charge by adopting a rule that provides, "[l]odging facility sales and use taxes do not apply to separately stated charges which are not an *integral part* of the use or occupancy of the room." Admin. R. M. 42.14.202(3) (2010) (emphasis added). However, administrative rules must be "consistent and not in conflict with the statute; and reasonably necessary to effectuate the purpose of the statute." Section 2-4-305(6), MCA (subsections omitted). As we have explained:

> The courts have uniformly held that administrative regulations are "out of harmony" with legislative guidelines if they (1) "engraft additional and contradictory requirements on the statute"; [*Swart ex rel. State v. Casne*, 172 Mont. 302, 308, 564 P.2d 983, 986 (1977)] or (2) if they engraft additional, noncontradictory requirements on the statute which were not envisioned by the legislature; [*Arizona State Bd. of Funeral Dir. v. Perlman*, 108 Ariz. 33, 492 P.2d 694 (1972)].

*Clark Fork Coalition v. Tubbs*, 2016 MT 229, ¶ 25, 384 Mont. 503, 380 P.3d 771 (citing

*Board of Barbers of the Dep't of Prof'l & Occupational Licensing of the State of Mont. v.*

*Big Sky Coll. Of Barber-Styling, Inc.*, 192 Mont. 159, 161, 626 P.2d 1269, 1270 (1981)).

¶18 In accordance with its rule, the Department determined that Boyne's Fee "is subject to the Use Tax because it is a mandatory, non-waivable fee that is integral to the use of the

accommodations and, therefore, satisfies the definition of accommodation charge." However, the Department's rule requires this Court to read into the statutory definition of "accommodations charge" the extra requirement that exempted charges be "an integral part" of the use or occupancy of a room. Admin. R. M. 42.14.202(3) (2010). We decline to do so because the rule engrafts an additional, noncontradictory requirement "not envisioned by the legislature." *Tubbs*, ¶ 25. As stated in § 15-65-101(1), MCA, and as the District Court noted, the exclusions from the accommodation charge do not require that they be "integral" to the use of a room.

¶19 We conclude the District Court did not err by holding that Boyne's Resort Services Fee is not subject to the Use Tax.

¶20 *2. Did the District Court err by holding that the Resort Services Fee is subject to the Sales Tax, §§ 15-68-101 through 15-68-820, MCA?*

¶21 On cross-appeal, Boyne argues the District Court erred by holding the Resort Service Fee is subject to the Sales Tax. The District Court concluded that the Fee "is not a waivable charge and constitutes the total amount of consideration for which Boyne's services are sold." Boyne argues that because the statute defines "Sales price" as "appl[ing] to the measure subject [i.e., accommodations]" to the sales tax, the Fee cannot be taxed because it is not, itself, an accommodation to which the Sales Price can be applied. Boyne also contends the Fee is excluded from the Sales Tax by § 15-68-101(14)(a)(iii), (b), MCA, which excludes from the definition of "Sales price" charges for "any services necessary to complete the sale," arguing the Fee is necessary to complete the sale because it is a mandatory fee assessed on all purchasers for amenities.

10

¶22 Montana's Sales Tax is found in Title 15, Chapter 68, MCA.[6] The Sales Tax funds transportation services for seniors and persons with disabilities, historical grants and programs, capitol development project, lodging expenditures for state agencies, tourism, commerce, and state-tribal economic development. Section 15-68-820, MCA. The Legislature imposed the Sales Tax on sales or use "of the following property or services: (a) 4% on accommodations and campgrounds." Section 15-68-102(1)(a), (3)(a)(i), MCA.[7] "[T]he Sales Tax taxes the purchaser on the sales price of an accommodation or rental vehicle, *which specifically includes the value of services*." *Priceline*, ¶ 16 (emphasis added). "The sales tax must be applied to the sales price." Section 15-68-102(2), MCA. The Sales Price "applies to the measure subject to sales tax," § 15-68-101(14)(a), MCA; here, the "measure" is the accommodations. The Sales Price is "the total amount or consideration, including cash, credit, property, and services," for which the subject property or services are sold. Section 15-68-101(14)(a), MCA. Exclusions from the Sales Price include, for purposes here, "charges by the seller for any services necessary to complete the sale" if they are "separately stated" on the invoice or billing "given to the purchaser." Section 15-68-101(14)(a)(iii), (14)(b), MCA. Thus, the Legislature has

---

[6] Although the Department administers the Use and Sales Tax collectively, "the Lodging Facility Use Tax and the Sales Tax are inconsistent and incompatible. . . . Accordingly, the statutes need not be construed *in pari materia* [literally meaning in the same manner]." *Priceline*, ¶ 16.

[7] While the Use Tax defines only "accommodation charge" but not "accommodations," the Sales Tax does: a "building or structure containing individual sleeping rooms or suites that provides overnight lodging facilities for periods of less than 30 days to the general public for compensation," that includes a facility represented as a resort, § 15-68-101(1)(a)-(b), MCA, while excluding specific facilities and other accommodation situations, § 15-68-101(c), MCA.

imposed the Sales Tax on the purchase (sale or use) of accommodations, calculated by assessing 4% of the "total amount or consideration" paid for services, less applicable statutory deductions.

¶23   There is no dispute here that Boyne offers accommodations for sale, and that Boyne's guests purchase the accommodations. Boyne's argument that the Resort Service Fee cannot be taxed because it is not itself an "accommodation" necessarily fails. The Sales Tax applies to the Sales Price paid by the guest for the use or purchase of the accommodations, which includes payment of the Resort Service Fee. *See* § 15-68-101(14)(a), MCA (stating that the Sales Price "applies to the measure subject to the sales tax and means the total amount or consideration. . . . for which personal property or services are sold, leased, rented or valued in money.").

¶24   Nor is Boyne's Resort Service Fee statutorily exempted from the Sales price, and thus the Sales Tax, as a "charge[] by the seller for any services necessary to complete the sale." Section 15-68-101(14)(a)(iii), (b), MCA. Boyne's argument is that a guest's payment of the Fee for receipt of the resort amenities is "essential to the completeness" of the transaction and is thus "necessary to complete the sale" for purposes of the statutory exclusion. The Fee is mandatory for the transaction, and to be sure, the amenities purchased by the guest by way of the Fee are no doubt an essential marketing component of the transaction; one typically does not visit a resort to spend the entirety of the visit in a "sleeping room." Section 15-68-101(14)(a), MCA. However, the statutory exemption contemplates only necessary ancillary costs of the transaction, such as the examples it

12

provides: "delivery and installation charges." Section 15-65-101(4)(a)(iii)-(v), MCA. The Fee for amenities is not merely necessary for the transaction; it is the transaction, along with the room, and mandatorily so, even though it is listed separately. Thus, the Fee does not qualify as an exclusion from the Sales Price and Sales Tax.

¶25    *3. Did the District Court err by holding that forfeited guest deposits are not subject to the Use Tax or the Sales Tax?*

¶26    The Department argues that Boyne "impermissibly retained Use Taxes and Sales Taxes that it collected as part of the reservation deposit when a guest cancels or fails to show up for the reservation."

¶27    The Sales Tax is "imposed on sales" of property or services. Section 15-68-102(1). A "sale" for purposes of the Sales Tax is defined as "*the transfer of property* for consideration or *the performance of a service* for consideration." Section 15-68-101(13), MCA (emphasis added). A "service" means "an activity that is engaged in for another person for consideration and that is distinguished from the sale or lease of property."[8] Section 15-68-101(17)(a), MCA. Thus, here, a "sale" is subject to the Sales Tax when the "performance of a service for consideration" has occurred. Section 15-68-101(13), MCA.

¶28    While partial consideration is given by the guest when paying a deposit at booking, the actual performance does not occur until the guest has received the service at the facility.

---

[8] Since use of Boyne's facilities cannot be considered a "transfer of possession or control of tangible personal property" as defined by the Sales Tax definition of "lease," *see* § 15-68-101(6)(a), MCA, purchasing accommodations more aptly qualify as a service "engaged in [with Boyne] for consideration." *See also Priceline*, ¶ 16 (stating that "the Sales Tax taxes the purchaser on the sales price of an accommodation . . . which specifically includes the value of services").

At that time, the "sale" occurs for purposes of the Sales Tax, because no "sale" occurs until a guest uses the facility, a deposit is not subjected to the Sales Tax until that point, and forfeited deposits are not taxable. *See* § 15-68-102(3)(a), MCA.

¶29 Similarly, the Use Tax applies only to an "accommodation charge," which is defined as the "use of the facility for lodging." Section 15-65-101(1), MCA. A guest who forfeits his or her deposit never uses Boyne's facility for lodging. In the absence of such use, there is nothing to tax under the statute, and, therefore, deposits that are forfeited are not subject to the Use Tax or payable to the Department.

¶30 Notwithstanding this application of the statutes, the undisputed record shows that Boyne's calculation of and charge for the 20% deposit *includes* the combined lodging taxes, which are not refunded to the customer when the reservation is cancelled, even though the taxes are never incurred or paid. The Department submitted evidence showing that when a guest makes a reservation, Boyne includes both the resort fees and applicable state taxes to determine the guest's estimated total charge. It charges the guest 20% of that estimated charge to secure the reservation. As Joel Baker, Department Auditor, testified, "this deposit, which was fully chargeable at 30 days out, included taxes and resort fees." If the guest cancels her reservation 30 days or less from the time she is due to arrive, the entire deposit is forfeited to Boyne, including the 4% Use Tax and 3% Sales Tax charges imposed to calculate the estimated charge. In other words, Boyne pockets the portion of the unrefunded deposit that it initially attributed to taxes. It is also clear that, if a guest stays at the resort, the deposit is applied to the guest's tax obligations.

14

¶31    Boyne did not submit contrary evidence, but offers on appeal that the deposit is simply a percentage of an estimate of the guest's anticipated charges, not the actual payment of any taxes. This argument does not hold up on the record because a forfeited deposit includes a charge for taxes that is not merely an estimate, but rather, a charge fixed by percentage of the statutory lodging taxes and assessed based upon 20% of the room charge. In other words, as Boyne calculates the deposit, it indisputably comprises both 20% of the guest's estimated lodging cost and 20% of the taxes applicable to that cost.[9]

¶32    The Department argues Boyne should be ordered to remit to the Department the tax charges it assessed and retained for cancelled reservation deposits or, alternatively, to refund the tax portion of the deposit to guests who forfeited the deposit. Given the conclusions we have reached above regarding application of the statutes, the Department is not entitled to receive these amounts and Boyne is not required to remit them. Nor are we able to consider, within this proceeding, what refund or relief is available for guests whose forfeited deposits included an assessment for taxes that were not remitted to the Department.

¶33    Affirmed.

/S/ JIM RICE

---

[9] Boyne suggests that the Court should not rely on the records it provided to the Department because they were examples from a 2016 mock reservation, after the audit period at issue. Boyne did not argue to the Department, however, that the examples it provided differed from how the reservation system worked during the time in question.

15

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR


Justice James Jeremiah Shea, concurring and dissenting.

¶34    I concur with the Court's resolution of issues two and three. I dissent from the Court's resolution of issue one.

¶35    The undisputed facts are these: Boyne increased the price for renting a room at its lodging facilities by 7%. Boyne deposits the entire 107% room charge into a single account. Although Boyne labels this additional 7% charge to the room a "Resort Services Fee," there is a term of art in the hospitality industry that is more commonly used to describe a 7% increase to the price of a hotel room—it's called a "price increase."

¶36    The Court holds that a 7% price increase on every room is not, in fact, a price increase but a nontaxable "Resort Services Fee" because, well, that is what Boyne calls it. Boyne argues that the Resort Services Fee is not taxable because it is not a charge for lodging, but a charge for a guest's use of various amenities. Except the charge is determined by, and assessed solely on, the price of the room. The charge correlates in no way to the provision of any amenities. Although Boyne provides a list of the various amenities it contends the guest is purchasing with the increased room charge—Kids Club, movies, etc.—that contention does not survive even passing scrutiny. If Guest A rents a nicer room than Guest B, Guest A will naturally pay a correspondingly higher price for the

16

room rental. Accepting Boyne's representation that the extra 7% charge on the room rate is actually a charge for unrelated amenities necessarily means that Boyne is charging Guest A a higher fee for these amenities than it is charging Guest B. So do Guest A's kids get more time in the ball pit at the Kids Club? Does Guest A get more butter on his or her popcorn at the movies? Of course not, because the 7% "Resort Services Fee" has nothing to do with the provision of any amenities—it is entirely and exclusively an increase on the room charge.

¶37 What Boyne has done here is no different than an employer giving an across-the-board 7% pay-raise to every employee and attempting to avoid the payroll and income tax by designating the raises as a per diem. If Boyne had increased its room prices by 7% and deposited the entire increased room charge into one account—*exactly* as it has done in this case—but it did not make up a separate name for the price increase, there would be no question that the additional 7% was taxable.

¶38 Since this Opinion now allows a lodging facility to avoid imposition of the Use Tax by unilaterally designating part of a room charge as something other than what it is, there is nothing to stop a company such as Boyne from simply designating future price increases as increases to the Resort Services Fee rather than increases to the room charge. It may not be long before Boyne may boast some of the lowest-priced hotel rooms in Montana— you just pay an arm and a leg for the amenities.

/S/ JAMES JEREMIAH SHEA

17

Chief Justice Mike McGrath and Justice Ingrid Gustafson join in the Concurrence and Dissent of Justice Shea.

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON

Justice Ingrid Gustafson concurring in part, dissenting in part.

¶39 I concur with Justice Shea's dissent with regard to issue one. I concur with the majority with regard to issue two. With regard to issue three, I dissent from the conclusion that forfeited guest deposits are not subject to the Use Tax or Sales Tax. As discussed in the majority opinion, Boyne requires payment of a non-refundable deposit 30 days prior to the guest completing his/her stay. At booking, Boyne informs guests the taxing and resort fees are assessed. If a guest cancels his/her reservation within thirty days of check-in, Boyne does not refund the deposit, nor remit any taxes collected to the Department.

¶40 I would conclude that the non-refundable deposit collected by Boyne is an accommodation charge which includes performance of booking services and is subject to Use and Sales taxes. When a guest books a room, s/he pays a non-refundable amount for the use of the room. When a guest books a room there is a presumption the guest will physically stay in the room but the guest nevertheless "uses" the room even if s/he never physically occupies it. For example, if a guest fails to cancel, but does not check-in and does not physically occupy the room, the guest still pays the full amount of the accommodation charge. Under this circumstance, Boyne remits Use and Sales taxes to the Department despite the guest not physically staying in or occupying the room. Similarly,

18

although the guest does not physically stay in the room when s/he cancels within 30 days of the scheduled physical occupation of the room, s/he pays for use of the room which includes the value of the booking services—holding, maintaining, and guaranteeing availability of the room. These booking services are included in the accommodation charge, *Priceline*, ¶ 16, and are thus subject to the Use Tax. The Sales Tax taxes the purchaser on the sales price of an accommodation, which here is the amount of the non-refundable deposit, and thus, subject to the Sales Tax as well.

/S/ INGRID GUSTAFSON